[No. 12085.    In Bank. — January 31, 1888.]

# CHAMPION MINING COMPANY, APPELLANT, *v.* CONSOLIDATED WYOMING GOLD MINING COMPANY, RESPONDENT.

MINING CLAIMS — UNION OF VEINS — PRIOR LOCATOR ENTITLED TO BELOW JUNCTION — EVIDENCE OF PRIOR LOCATION. — The action was between the owners of two adjoining quartz mining claims, the respective veins of which united below the surface of the ground, and involved the determination of the question as to who was entitled to the vein below the point of junction. Under section 2336 of the United States Revised Statutes, where veins so unite, the oldest or prior location is entitled to the vein below the point of junction. The defendant claimed under a patent from the United States, dated the 19th of September, 1874, and on the trial introduced in evidence the preliminary papers and proceeding in the United States land-office upon which the patent was based, for the purpose of showing a valid location prior to the date of the patent. The court found that no valid location of the plaintiff's claim was made until 1879. *Held*, that the defendant's location must be considered as having been made at least from the date of its patent, and that the introduction of evidence to show a prior location, conceding it to have been erroneous, was immaterial.

ID. — INJUNCTION — THREATENING TO WORK CLAIM. — A plaintiff, claiming to be the owner of a mining location, is not entitled to an injunction to restrain the defendant from mining upon such location, if the defendant never has mined thereon, and never has threatened to do so.

ID. — ADJOINING END LINES — DIVERGENCE OF END LINES. — Where the north end line of one quartz mining claim is identical with the south end

line of an adjoining claim, at a place where the ledge crosses from the ground of one into that of the other, and such end lines at another place diverge, the owners of the claims have the entire ownership of the ledge included within their extreme end lines, with the exclusive right to follow its dips and angles laterally; and may, as against a subsequent locator, agree between themselves as to the right to work the portion of the ledge included within the piece of ground formed by the divergence of their end lines.

APPEAL from a judgment of the Superior Court of Nevada County, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*Edward Lynch,* for Appellant.

*Gaylord & Searls,* and *Van Clief & Gear,* for Respondent.

McFARLAND, J.—This action was brought to recover damages for alleged trespasses by defendant upon the mining claims of plaintiff, and to obtain an injunction against similar trespasses in the future. The answer admits that defendant, by accident, took from plaintiff's claims gold-bearing quartz of the value of one hundred and twenty dollars, but denies the other material averments of the complaint. The court below (sitting without a jury) found in favor of defendant; gave judgment for plaintiff for said one hundred and twenty dollars, but for no more; and denied the prayer for an injunction. Plaintiff appeals from the judgment, and from an order denying a new trial.

The transcript is very lengthy,—containing a great many exceptions, about a dozen maps, and several hundred pages of oral testimony and documentary evidence. The briefs (filed in addition to the oral argument) are exceedingly elaborate and able, and very ingenious. The whole record presents a formidable mass somewhat discouraging to one seeking to know what there is in it. Upon a thorough examination, however, many of the

apparent difficulties vanish, and the case is resolved into a few main propositions.

Each of the parties is a mining corporation, and each owns a body of quartz mining claims. The surface ground of each party adjoins that of the other. In the ground of plaintiff there is a quartz ledge called the Phillip ledge, and in the ground of defendant there is a ledge called the Wyoming. After the respective rights of the parties to these ledges had vested, it became known, for the first time, that at various levels beneath the surface, and at a general average depth of about five hundred feet, these two ledges (the Phillip and Wyoming) *united*, and from thence downward formed only one ledge. Defendant, by accident or mistake, took one hundred and twenty dollars' worth of quartz out of the Phillip ledge at a point above its junction with the Wyoming, for which judgment was confessed; but the real trespass complained of was that the defendant took gold-bearing quartz out of the united ledge *below* the junction. And so the main question in the case is, Who owns the united ledge?

The rule by which such a question must be determined is stated in section 2336, Revised Statutes of the United States, and is as follows:—

"Where two or more veins unite, the oldest or prior location shall take the vein below the point of junction, including all the space of intersection."

Consequently, the main question depends upon the underlying question, Which party holds under the older location? And the most important exceptions which appear in the record were to rulings of the court as to the admissibility of evidence offered upon this question of prior location.

The grantors of defendant received a United States patent for the Wyoming ledge (or at least for the ground in which the apex and upper part of the ledge are situated) on the nineteenth day of September, 1874. The

plaintiff has not a patent for the land in which the Phillip ledge is situated, but holds a possessory title thereto under general mining customs, and the laws of the United States and of this state upon the subject. (And this latter kind of title is, of course, as good for the purpose of a suit like the present one as a patent.)

The defendant, for the purpose of showing a valid location of the Wyoming ledge at certain periods prior to the date of the patent, introduced, against the objections and exceptions of plaintiff, the preliminary papers and proceedings filed and had in the United States land-office upon which the patent was based. These papers and proceedings, if properly admitted, showed or intended to show: 1. That the official survey of the Wyoming mine, as afterwards incorporated into the patent, was made December 10, 1872. The application for the patent, which was filed March 8, 1873, stated that the mine was located in 1851 or 1852, by persons then unknown, and that, if recorded, the record was destroyed by the fire which burned the court-house in Nevada City in 1856; and also, among other things, that the applicants were in the quiet and actual possession of, and that there had been no opposing or adverse claim to the premises "for two years last past," that being the statutory period of limitation for actions relative to mining claims. The court below seemed to take the view that these proceedings in the land department of the United States constituted an authoritative adjudication of the truth of the statements in the application which bound the plaintiff. And counsel for defendant strenuously argues that, as the law of Congress provides that actual possession, without any adverse claim, during the period of statutory limitation, gives a right to a patent; and as the application in question put the right to a patent on that ground,— therefore it should be held to have been conclusively adjudicated that the Wyoming claim was located at least

two years before the date of the application, which would be March 8, 1871.

If the determination of this appeal necessarily involved the correctness of the ruling of the court below on this point, a very grave question would be presented. Where an application for a patent to mining land has been filed in the United States land-office, and notice thereof given as required by statute, and no adverse claim has been filed, and the proceedings have regularly culminated in a patent, it may be said generally that the proceedings are conclusive against a third person as to those things with respect to which he might have filed an adverse claim. But with respect to the united ledge which was afterwards discovered to be a union of the Wyoming and the Phillip, there was nothing in the application for a patent to the Wyoming claim which called for any contest by the owners of the Phillip. The application for the Wyoming claim, if granted, would result in a patent for only the surface ground claimed, and the ledges whose apexes were within it. If it should turn out that a ledge within that ground united with another ledge, the property of an adjoining owner, the ownership of the united ledge would have to be determined upon the principle of priority of location. Moreover, at the time of the Wyoming application and patent, the union of the two ledges at a great depth in the earth was entirely unknown, and not even suspected. The owners of the Phillip ledge, therefore, with respect to the present claim to the united ledge, would and could not have had any standing in the land department as adverse claimants to the Wyoming application. It is, therefore, somewhat difficult to see how the question of priority of location between the Phillip and Wyoming ledges could be adjudicated in a proceeding in which the location of the Phillip ledge was not involved at all; or how *ex parte* proof, offered in the Wyoming application for the satisfaction of the United States government, is

admissible in the case at bar, where the contest is about something not appearing on the face of that application, or involved in that proceeding. If, therefore, the determination of this appeal necessarily depended upon the correctness of the ruling of the court below, admitting the proceedings in the land-office in evidence, we would be strongly inclined to hold such ruling to have been erroneous. In the view which we take of the case, however, it is not necessary to pass conclusively upon that question.

The court below found that there was no valid location of the Phillip ledge until 1879,—about five years after the issuance of the Wyoming patent. The finding is " that no boundaries of said location [the Phillip] were ever marked upon the ground so that the same could be readily traced prior to March 25, 1879." This is a *finding of fact;* and unless it can be successfully attacked as not being supported by the evidence, then it is immaterial whether the admission of evidence to show a location of the Wyoming claim at a date prior to the patent was erroneous or not. For of course the title of defendant would be good, at least from the date of the patent; and if at that time there was no location of the Phillip claim, then the Wyoming must be held to have been the prior location. And as to the sufficiency of the evidence to support the finding on this point, we need only say that we could not disturb that finding even though we were to go far beyond the limits of the rule so often laid down by this court for the review here, of questions of fact. There was clear proof of a location of the Phillip claim on the 25th of March, 1879; and the court found that there was a location on that day, but that there was none prior to that time. Now, to upset this finding, it must be affirmatively shown that under the evidence it was the clear duty of the court, forced upon it by evidence without material conflict, to find a location of the Phillip claim prior to 1879,— and indeed, prior to 1874,

the date of the Wyoming patent.    But such a proposition is clearly not maintainable.    We of course will not recite the evidence here; and it is sufficient to say that if the court had found the other way it would have done so upon an exceedingly slender basis.

The record shows many exceptions to rulings of the court admitting or rejecting offered evidence; but they mostly relate to evidence offered to prove or disprove a location of the Wyoming at dates prior to the patent.    But, as we have stated, these rulings, whether right or wrong, were immaterial.    With respect to the rulings of the court upon offers of evidence to prove or disprove the true dates of the locations of the Phillip ledge, and of the other claims of appellant, we see no material error.    (What has been said of the Phillip ledge applies equally to the small location claimed by appellant, called the Muller, and also called the Ural Extension.    It is in the same category with the Phillip, except that the court also finds that it was *never* marked on the ground so that the boundaries could be readily traced, and that no gold-bearing ledge having its apex within the claim was ever discovered.)    And as the alleged trespasses were committed upon the united ledge claimed by appellant by virtue of its ownership of the Phillip ledge, the above views are determinative of the main controversy in the case against the appellant.

2.  There are two other propositions presented by appellant.    The respondent has a patented mine called the Ural; and the appellant claims a ledge in its adjoining ground, called the New Years and New Years Extension. And appellant contends that near the southerly end of respondent's ground the Ural ledge passes through the side line of the Ural patented ground into the New Years ground,—thus making said side line, in law, an end line. But the court finds that said line is not an end line of the Ural ledge of respondent, and that there is no sufficient evidence to show where said ledge crosses the lines of the

Ural patent.   It finds, also, that the location of the Ural mine was prior to that of the New Years claim of appellant.   Moreover, it finds that respondent has not mined, and does not threaten to mine, any ground claimed by appellant, except the united ledge formed by the junction of the Phillip and the Wyoming, as above stated.   And these findings are sustained by evidence. There is, therefore, no basis here for an injunction or damages.

3. At the northern end of the Wyoming patented ground there is another patented claim called the Schmidt claim, owned by the Nevada City Mining Company.   And appellant contends that the north line of the one was not identical with the south line of the other; that is, that between the north line of the Wyoming, as patented, and the south line of the Schmidt, as patented, there was a small piece of ground not included within the lines of either patent; and that, therefore, the respondent would not be entitled, as against the owners of the Phillip, to follow the Wyoming ledge under this piece of land, or to the united ledge if found there.   But the court found, upon sufficient evidence, that the Wyoming and Schmidt locations were both long prior to that of the Phillip; that they always adjoined each other on the north and south; that the southwest line of the Schmidt patent was for a long distance identical with the north line of the Wyoming patent; and that *where these two lines were thus identical,* the Wyoming ledge crosses over the Wyoming patented ground into the Schmidt patented ground, leaving no intermediate ground between the two claims.   This undoubtedly gave to the owners of the Wyoming and Schmidt claims the entire ownership of the ledge from the northerly end of the one to the southerly end of the other, with the exclusive right to follow its dips and angles laterally.   It appears that at a point a considerable distance easterly of the point where the ledge crosses the line common to

the Wyoming and the Schmidt as aforesaid, the northerly patented line of the Wyoming, and the southerly patented line of the Schmidt, diverge, leaving a small triangular piece of ground between; and the two companies by agreement divided this piece of land—or rather, the right to work the ledge under it—between them. This they had the right to do, as against any third party subsequent in location.

From a thorough examination of the whole case, we find no reason to disturb the judgment of the court below.

Judgment and order affirmed.

PATERSON, J., SHARPSTEIN, J., THORNTON, J., TEMPLE, J., and MCKINSTRY, J., concurred.

SEARLS, C. J., having been of counsel in the court below, did not participate in the decision.