HICKEY ET AL., RESPONDENTS, *v.* ANACONDA COPPER MINING COMPANY ET AL., APPELLANTS.

(No. 2,064.)

(Submitted March 15, 1905. Decided July 24, 1905.)

*Mines—Action to Quiet Title—Ore Bodies—Trial by Jury— Appeal—Review of Evidence—Assignments of Error—Record—Exhibits—Certificate of Judge—Extralateral Rights— Declaratory Statements—Patents—Doctrine of Relation.*

Mines—Action to Quiet Title—Ore Bodies—Jury Trial.
  1. In an action brought for the purpose of quieting title to ore bodies, the parties are not entitled, as a matter of right, to a trial by jury.
Appeal—Review of Evidence—Assignments of Error—Briefs.
  2. On appeal from a decree and an order denying a motion for a new trial, in an action to quiet title to ore bodies, the supreme court

may review the evidence to determine whether or not it supports the findings and decree, although the order of the trial court denying the motion for a new trial is not specified as error in appellant's brief.

Appeal—Review of Evidence—Record—Exhibits.

3.   While ore samples introduced as exhibits in the trial of a case may be brought to the supreme court as original exhibits, under the rules of that court, yet they are not required to be taken up as a part of the evidence in the case on review.

Appeal—Record—Contents—Evidence.

4.   Code of Civil Procedure, section 1173, does not require that the record on appeal must show that it embraces *all* the evidence introduced at the trial of the case, but only such as is necessary to make the statement truly represent the case.

Appeal—Record—Exhibits—Certificate of Judge—Imports Verity.

5.   In the absence of any showing that exhibits, alleged to have been omitted from the record on appeal are material to the consideration of the appeal, the certificate of the presiding judge will be accepted by the appellate tribunal as importing verity, and the statement considered as containing all the matter necessary to make it truly represent the case.

Mines—Extralateral Rights—Discovery Shaft—Location— Cross-examination.

6.   In an action to determine extralateral rights, one of the questions in controversy was whether the discovery vein extended lengthwise of the claim, intersecting its end lines, or whether it extended diagonally across the claim through both of its side lines. One of the locators, on direct examination, testified that he and his associates had discovered a vein within the surface lines of the claim, had sunk a discovery shaft thereon, and could trace the vein in an easterly and westerly direction. On cross-examination he further stated that a second shaft was sunk on the claim in a northwesterly direction from the discovery shaft. An objection was sustained to the further question whether this second shaft was sunk on the discovery vein. *Held,* that the statements of the witness on direct examination authorized his cross-examination relative to the location of the discovery shaft, the course or strike of the discovery vein, the location and character of the assessment work done on the claim which might have thrown light on the issue of the course of the vein, and whether, as a fact, the discovery shaft was actually sunk on the vein.

Mines—Expert Witnesses—Prospectors.

7.   A question asked of a locator of a mining claim, in an action to quiet title to ore b dies, whether a certain shaft had been sunk on the discovery vein, did not call for expert or opinion testimony, so as to bring the witness within a stipulation by which each side agreed to confine itself to a certain number of geological and expert witnesses.

Mines—Location—Patents—Evidence—Findings.

8.   In an action to determine extralateral mining rights, evidence *held* insufficient to support a finding that the location of plaintiff's claim was prior to the location of either the O. or N. claims, and that the patent to plaintiff's claim was issued prior to the patents to such other claims.

Mines—Declaratory Statement—Verification—Statutes—Constitutionality.

9.   The Act of 1873 (Laws Extra. Session, 1873, p. 83) declaring that

any person who shall discover any mining claim upon any vein or lode bearing gold, silver, etc., shall, within twenty days thereafter, make and file for record in the recorder's office of the county in which the discovery is made a declaratory statement thereof in writing, on oath, describing such claim in the manner provided by the laws of the United States, etc., was not unconstitutional, as in conflict with United States Revised Statutes, section 2324 (U. S. Comp. Stats. 1901, p. 1426), which does not require the notice or declaratory statement to be verified.

Mines—Declaratory Statement—Insufficiency.

10. *Held*, under Act of 1873 (Laws Extra. Session, 1873, p. 83) requiring declaratory statements to be verified on oath of the locator, recorded, etc., "in the manner provided by the laws of the United States" (Rev. Stats., sec. 2324), that a verification reciting that the subscribers, who, being first duly sworn, on oath said, each for himself, that he was of lawful age, a citizen of the United States and that the foregoing notice by them subscribed was a true copy of the original notice of location of the claim "above described, as posted thereon on the day therein stated," was fatally defective.

Mines—Location—Patent—Doctrine of Relation.

11. The question whether a patent to a mining claim relates back to the date of its location must be determined by the facts of each particular case.

Mines—Patent—Not Conclusive—Of What Fact.

12. The patent to a mining claim is not conclusive of the fact that a declaratory statement in due form of law was filed for record.

Mines—Patent—Doctrine of Relation.

13. Where the declaratory statement, filed in support of a mining location was void, the patent subsequently issued did not, by relation, give validity to the location at a date antecedent to the application for the patent.

Mines—Extralateral Rights—Decree.

14. A decree entered in an action to quiet title to certain ore bodies, awarding extralateral rights within planes in fan shape, was erroneous.

*Appeal from the District Court, Silver Bow County; Wm. Clancy, Judge.*

Action by Edward Hickey and others against the Anaconda Copper Mining Company and another. From a judgment in favor of plaintiffs, and from an order denying them a new trial, defendants appeal. Reversed.

*Mr. John J. McHatton, Messrs. Bach & Wight,* and *Mr. James M. Denny,* for Respondents.

It is held by all modern decisions and text-writers that the statute giving the right to extralateral pursuit of a vein should be liberally construed and upheld whenever possible. In case of doubt. the doubt should be resolved in favor of the right to

pursue the vein extralaterally. (*Consolidated Wyoming Gold Min. Co.* v. *Champion Min. Co.*, 63 Fed. 540; *Del Monte M. & M. Co.* v. *Last Chance M. & M. Co.*, 171 U. S. 55, 18 Sup. Ct. 895, 43 L. Ed. 72.) Where it appears that a vein has its apex in a claim and that, so far as developed, it trends in the direction of the end lines, it is presumed to pass through them. (*Armstrong* v. *Lower*, 6 Colo. 393, 581.) This doctrine has been so liberally applied as to give the older location the right to the entire vein on its dip, where the apex is bisected by the side line of the claim. (*St. Louis M. & M. Co.* v. *Montana Min. Co.*, 104 Fed. 664, 44 C. C. A. 120, 56 L. R. A. 725; *Empire State-Idaho M. & D. Co.* v. *Bunker Hill & S. M. & C. Co.*, 121 Fed. 973, 58 C. C. A. 311; *Last Chance Min. Co.* v. *Bunker Hill & S. M. & C. Co.*, 131 Fed. 579.) The courts have also been liberal in defining what constitutes a vein. (*Hyman v. Wheeler*, 29 Fed. 347, 353; *Iron Silver Min. Co.* v. *Chessman*, 116 U. S. 529, 6 Sup. Ct. 481, 29 L. Ed. 712; *Shreve* v. *Copper Bell Min. Co.*, 11 Mont. 309, 28 Pac. 315.)

And all this to the purpose that the locator may have the benefit of the law and all rights attaching to his location. (See, also, Snyder on Mines, secs. 781, 790, 792, 803.)

The evidence cannot be reviewed because the same was brought before the lower court on motion for new trial, and it is not assigned that the trial court erred in overruling said motion. This court has repeatedly held that the sufficiency of the evidence to support a verdict or judgment cannot be considered where there is no motion for a new trial. (*Beatty* v. *Murray Placer Min. Co.*, 15 Mont. 314, 39 Pac. 82; *Blessing* v. *Sias*, 7 Mont. 103, 106, 14 Pac. 663; *Kleinschmidt* v. *Iler*, 6 Mont. 122, 124, 9 Pac. 901; *Adler Gulch Min. Co.* v. *Hayes*, 6 Mont. 31, 9 Pac. 581; *Twell* v. *Twell*, 6 Mont. 19, 9 Pac. 537; *Largey* v. *Sedman*, 3 Mont. 472, 475; *Allport* v. *Kelley*, 2 Mont. 343; *Princeton Min. Co.* v. *First Nat. Bank*, 7 Mont. 530, 535, 19 Pac. 210; *Lloyd* v. *Sullivan*, 9 Mont. 577, 588, 24 Pac. 218.)

After a statement on motion for a new trial, embodying the testimony, has been submitted to the trial court, on motion for a new trial, and the motion overruled, can such statement be considered on appeal, so as to permit this court to review the evidence, where it is not assigned that the trial court erred in overruling the motion for a new trial? We submit not, as it logically follows, from the rulings of this court above referred to, that such use cannot be made of it. (*Withers* v. *Kemper*, 23 Mont. 432, 65 Pac. 422.) The review on appeal is confined to the consideration of such matters as may be presented to the trial court. (*Campbell* v. *Great Falls*, 27 Mont. 37, 69 Pac. 114.) Unless all the evidence is in the record the evidence cannot be considered. (*Ramsey* v. *Burns et al.*, 27 Mont. 154, 69 Pac. 711.) This court will not consider any error except those assigned. (*Murray* v. *Heinze*, 17 Mont. 353, 42 Pac. 1057, 43 Pac. 714; *State* v. *Whaley*, 16 Mont. 574, 41 Pac. 852; *Hutton* v. *Reed*, 25 Cal. 478.) All errors not assigned are considered to be waived. (*Gila R. I. Co.* v. *Wolfley*, 3 Ariz. 176, 24 Pac. 257.) Even where error is assigned, but not argued, it is deemed waived. (*Maloney* v. *King*, 25 Mont. 188, 64 Pac. 351; *King* v. *Pony Gold Min. Co.*, 28 Mont. 74, 92, 93, 72 Pac. 309; *Hayes* v. *Union Mer. Co. et al.*, 27 Mont. 264, 70 Pac. 975; *Elliott* v. *Martin et al.*, 27 Mont. 519, 71 Pac. 756.)

Even though the errors are specified in the motion for a new trial, they cannot be considered unless error is assigned to the action of the court in overruling the motion. (*Terre Haute* v. *Fagan*, 21 Ind. App. 371, 52 N. E. 457; *Carson* v. *Frink*, 27 Kan. 524; *Case* v. *Jacobitz*, 9 Kan. App. 842, 62 Pac. 115; *Chicago etc. R. Co.* v. *German Ins. Co.*, 2 Kan. App. 395, 42 Pac. 594, and great list of cases cited.) Rulings which properly constitute causes for a new trial cannot be assigned independently as specifications of error in the reviewing court. (*Crowfoot* v. *Zink*, 30 Ind. 446; *Maybin* v. *Webster*, 8 Ind. App. 547, 35 N. E. 194, 36 N. E. 373; *Merchants' etc. Bank* v. *Fraye*, 9 Ind. App. 161, 53 Am. St. Rep. 341, 36 N. E. 378; *Hunt* v. *Listenberger*, 14 Ind. App. 326, 42 N. E. 240.)

Matters assignable as grounds for a new trial cannot be made the subject of independent assignments of error in the reviewing court, but must be embraced in a motion for a new trial, and then the action of the trial court in overruling the motion assigned as error; otherwise, the evidence cannot be considered or reviewed.    (*New Albany* v. *Slider,* 21 Ind. App. 392, 52 N. E. 626; *Hunt* v. *Listenberger, supra; Merchants' etc. Bank* v. *Fraye, supra; Johnson* v. *Badger L. Co.,* 8 Kan. App. 580, 55 Pac. 517; *Wright* v. *Darst,* 8 Kan. App. 492, 55 Pac. 516; *Walter A. Wood etc. Co.* v. *Farnham,* 1 Okla. 375 33 Pac. 867; *Wolcott* v. *Bachman,* 3 Wyo. 335, 23 Pac. 72, 673; *United States* v. *Trabing,* 3 Wyo. 144, 6 Pac. 721; *Gandy* v. *Cummins,* 64 Neb. 312, 89 N. W. 777.)

The record does not contain all of the evidence, and therefore the evidence cannot be reviewed.   A general statement in a bill of exceptions that it contains all of the evidence will not control when it appears from the body of the bill that evidence is omitted therefrom.    (*Benton* v. *Beakey* (Kan.), 78 Pac. 410; *Rhea* v. *Crunk,* 12 Ind. App. 23, 39 N. E. 879; *Farr* v. *Bach.* 13 Ind. App. 125, 41 N. E. 393; *Merrifield* v. *Weston,* 68 Ind. 70; *T. C. Power & Bro.* v. *Stocking,* 26 Mont. 478, 68 Pac. 857; *Garrity* v. *Hamburger Co.* (Ill.), 28 N. E. 743; *State* v. *School Dist. No. 3,* 14 Wash. 222, 44 Pac. 270; *Hart* v. *Hart,* 74 Iowa, 487, 38 N. W. 375; *Acker Post, No. 21, G. A. R.* v. *Carver,* 23 Minn. 567; *Huston* v. *McCloskey,* 76 Ind. 38; *Jennings* v. *Durham,* 101 Ind. 391; *Marvin* v. *Sager,* 145 Ind. 261, 41 N. E. 310; *Finlen* v. *Heinze,* 28 Mont. 548, 73 Pac. 123.)   A judge's certificate cannot, under the statute, have the effect of certifying that it contains all the evidence.  (*Exendine* v. *Goldstine* (Okla.), 77 Pac. 45; *Kane* v. *Kane,* 35 Wash. 517, 77 Pac. 842; *Smith* v. *Alexander,* 67 Kan. 862, 74 Pac. 240; *Clay* v. *Clark,* 76 Ind. 163; *Brown* v. *Johnson,* 14 Kan. 377.)   All the evidence must be in the record.  (*Ramsey* v. *Burns,* 27 Mont. 154, 69 Pac. 711.)

*Mr. A. J. Shores, Mr. W. W. Dixon, Mr. C. S. Thomas, Mr. C. F. Kelley, Messrs. Forbis & Evans,* and *Mr. D. Gay Stivers,* for Appellants.

Equity being without jurisdiction to try the question at bar (*Kennedy* v. *Elliot,* 85 Fed. 832; *Dice* v. *McCauley,* 22 Or. 456, 30 Pac. 160; *Love* v. *Morrill,* 19 Or. 545, 24 Pac. 916; *Wetherbee* v. *Dunn,* 36 Cal. 249; *Wilson* v. *Hart,* 98 Mo. 618, 12 S. W. 249), certainly, the action was one at law, and defendant was entitled to a trial by jury. (4 Am. & Eng. Ency. of Law, 838, 839; *Tabor* v. *Cook,* 15 Mich. 322; *Newman* v. *Duane,* 89 Cal. 597, 27 Pac. 66; *Hughes* v. *Dunlop,* 91 Cal. 385, 27 Pac. 642; *North Pennsylvania Coal Co.* v. *Snowden,* 42 Pa. St. 488, 82 Am. Dec. 530; *Davis* v. *Morris,* 36 N. Y. 569.)

The appellants contend that while the patent may be conclusive evidence of the fact that a location had been duly made in accordance with law, where the patent is silent, as in this case, as to the date of location, the patent does not prove the date of location, but simply the fact that a location upon which the patent issued has been duly made; and that when plaintiffs undertook for the purpose of establishing their priority of location, in order to become the owners of veins found below a point of junction, as they did in this case, it was incumbent upon them to prove the date by the introduction of a valid notice of location. The date of location became in this case an important fact for the purpose of determining the priorities of the parties. The date, therefore, in this connection was not a matter in the chain of title of the plaintiffs, but was a separate, independent and distinct fact which could only be proved by the introduction of competent evidence with reference thereto. The notice of location offered was void under the decisions of this court.

The notice of location, having been void, it was incapable of initiating a right, for *void* means of no legal effect, and such being the case, it was also error to admit in evidence

an amended location of the Nipper lode claim, because an amended location cannot be predicated upon a void location. (Lindley on Mines, sec. 397; also, sec. 398; *Moyle* v. *Bullene,* 7 Colo. App. 308, 44 Pac. 69.)

That the patent only relates back and shuts out intervening rights from the date of entry, see *In re American Hill Quartz Mine,* 3 Sickles, Min. Dec. 377, s. c. Commrs.' Dec., 3 Sickles, Min. Dec. 384; *Gold Blossom Quartz Mine,* 2 L. D. 767; *American Hill Quartz Mine,* 5 Copp's L. O. 114, 6 Copp's L. O. 1; *Aurora Hill Cons. M. Co.* v. *'85 Mining Co.,* 34 Fed. 514; *Deno* v. *Griffin,* 20 Nev. 249, 20 Pac. 308; *Alta M. & S. Co.* v. *Benson M. & S. Co.,* 2 Ariz. 362, 16 Pac. 565; *Benson M. Co.* v. *Alta M. & S. Co.,* 145 U. S. 428, 12 Sup. Ct. 87, 36 L. Ed. 762; *Deffaback* v. *Hawke,* 115 U. S. 392, 6 Sup. Ct. 95, 29 L. Ed. 423.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

The plaintiffs in this action assert their ownership in, and right of possession to, an undivided thirty-one thirty-sixths interest in the Nipper lode mining claim. They allege that there is in said claim a vein bearing copper and other minerals, which vein extends lengthwise of said claim, substantially parallel with the side lines and through the end lines of said claim, which end lines are parallel; that said vein so far departs from a perpendicular in its descent into the earth that it extends beyond the south side line of the Nipper claim and into the Oden claim, owned by the defendant Washoe Company, and also into the Anaconda and Neversweat claims, owned by the defendant Anaconda company; and that these defendants have entered upon and have mined and extracted ores from said Nipper vein. The prayer of the complaint is that the defendants be required to set forth their respective claims, that the title of plaintiffs to the ores in said vein be quieted, and for an injunction *pendente lite,* and that upon final determination a decree be entered, among other things, enjoining

the defendants from asserting any interest in said vein or in the Nipper claim.

The answer of defendant Washoe company admits many of the allegations of the complaint, and alleges that the vein in the Nipper claim, called by the plaintiffs the Nipper vein, extends in a northwesterly and southeasterly direction across said Nipper claim, intersecting its side lines. It avers its ownership to the Oden claim, and that it is entitled to the possession of all the veins and ore deposits lying within the vertical boundaries of said Oden claim.

The answer of the defendant Anaconda company asserts its ownership to the Anaconda and Neversweat claims; admits many of the allegations of the complaint, but denies any knowledge or information sufficient to form a belief as to whether or not there is within the Nipper claim any vein extending lengthwise of said claim, or intersecting either of its end lines; and denies that the plaintiffs are the owners of or entitled to any mineral in any vein, lead, or lode within the vertical planes or boundaries of either the Anaconda or Neversweat claims.

The affirmative allegations of these answers are put in issue by replications. Defendant Washoe company asked leave of court to make an amendment to its answer by adding thereto a counterclaim in the nature of a complaint in ejectment. This application was denied. Defendants also moved the court for a trial by jury, but this motion was overruled. Other proceedings were taken, which it is not necessary now to consider. The cause was tried to the court without a jury, and findings of fact and conclusions of law were made, and a decree entered in favor of the plaintiffs, from which decree and an order denying their motion for a new trial the defendants appealed.

1. Right of trial by jury. This case is not distinguishable in its character from the case of *Montana Ore Pur. Co. v. Boston & Montana Con. C. & S. Min. Co.*, 27 Mont. 288, 70 Pac. 1114; s. c. 27 Mont. 536, 71 Pac. 1005, known as the "*Pennsylvania*

*Case*," and the decision in that case is decisive of this question, adversely to the contention of the appellants.   We see no reason to change our views therein expressed, but, on the contrary, particularly reaffirm the doctrine that in cases of this character the parties are not entitled, as a matter of right, to a trial by jury.

2. The power of this court to consider the evidence.   It is contended by respondents that this court may not review the evidence to determine whether or not it supports the findings and decree, for the reasons (1) that the order of the court denying the motion for a new trial is not specified as error in appellant's brief; and (2) that the record does not contain all the evidence.

Whatever may be the rule in other jurisdictions, where the specifications of error relied upon are required to be contained in the petition in error, the rule that the order of the court denying the motion for a new trial must be assigned as error does not prevail in this jurisdiction.   Our statute (Section 1171, Code of Civil Procedure) specifies the grounds upon which a motion for a new trial may be made.   Of course, the statement which is presented to the lower court could not assign as error a ruling of that court not then made, and it could only be presented to this court by way of an assignment in the appellants' brief.   But there is no reason whatever for this in this state, where an appeal lies directly from the order of the court denying a motion for a new trial.   If the defendant in the court below has interposed a general demurrer to the complaint, and has stood upon his demurrer and suffered judgment to go against him, on appeal to this court an assignment that the court erred in overruling his demurrer will be considered by this court, and if found to be well taken, the judgment will be set aside.   Likewise, if it be found that the evidence does not support the decision, or if in the course of the trial the court has committed errors prejudicial to the appellant, and those errors have been properly saved and presented to this court, they will be considered, and the order of the lower court set aside, and a new trial directed.

The judge of the district court certifies that the record contains all the evidence introduced upon the trial of this cause. But respondents contend that, notwithstanding this recital, certain ore samples and certain maps or plats used on the trial of this cause are not before this court on this review.

In the first place, the statute does not contemplate that ore samples shall be brought to this court for examination. They may be brought here as original exhibits under the rules of this court, but there is no requirement that they shall be. Furthermore, the statute (Section 1173, Code of Civil Procedure) does not contemplate that the record shall contain all the evidence which may have been introduced in the court below. On the contrary, it provides: ''It is the duty of the judge or referee in settling the statement to strike out of it all redundant and useless matter, and to make the statement truly represent the case, notwithstanding the assent of the parties to such redundant and useless matter, or to any inaccurate statement.'' At least one of the exhibits which respondents contend is not before the court is in fact found in the record before us. In the absence of any showing that the other exhibits omitted are material to a consideration of this appeal, the certificate of the presiding judge will be accepted as importing verity, and the statement considered as containing all of the matter necessary to make it truly represent the case; and when this court has heretofore said that the record must show that it embraces all the evidence, the phrase ''all the evidence'' was used in the sense meant by the statute, viz., all the evidence necessary to make the statement truly represent the case.

3. Cross-examination of the witness Steward. As one of their witnesses, plaintiffs called John M. Steward, one of the original locators of the Nipper claim, and upon his direct examination asked him to identify the Nipper declaratory statement and the plat of that claim used in the Land Department upon application for patent. He was asked if he had anything to do with the making of the location of the Nipper claim, when it was located, whether there was any discovery of a vein made upon

the ground embraced in the surface lines of that claim, and what the locators did after discovery with reference to the possession of the claim.   In answer to these questions the witness testified that he was one of the original locators; that the claim was located on the 16th day of October, 1875; that they did discover a vein upon the ground embraced within the surface lines of this claim; that they found there a wall and rock in place, sunk a discovery shaft, and traced the vein east and west; that after this they worked on the claim and represented it from year to year until they secured patent.   Upon cross-examination he was asked if the locators did not sink another shaft on the claim northwest from the discovery shaft prior to their application for patent.   He answered, "Yes," and stated that it was sunk in 1876 or 1877.   He was then asked whether or not this second shaft was sunk upon the discovery vein.   This question was objected to on the ground that it was not cross-examination, and the objection sustained.   Thereupon defendants offered to prove by the witness that the shaft sunk northwest from the discovery shaft, and shown upon the plat of the ground used in making application for patent, was in fact sunk upon the vein in its northwesterly course from the discovery shaft; that this was done as a part of the assessment work prior to application for patent, and that the true course and direction or strike of the vein is represented by a line drawn from the discovery shaft to this second shaft, and continued in the same direction both northwest and southeast; and that this witness had testified that the course of the vein was in that direction upon a former hearing in the same court.   This offer was likewise rejected, and these rulings of the court are counted errors by appellants here.   So much of the plat with reference to which the witness was testifying as is necessary to illustrate the importance of this controversy is herewith reproduced.   (See Diagram No. 1.)

When it is considered that the actual controversy, as shown by the pleadings, so far as the Washoe company is concerned, and by the testimony, so far as the Anaconda company is concerned, was as to whether the Nipper discovery vein extends lengthwise of the Nipper claim, intersecting its end lines, as contended by plaintiffs, and as represented in the annexed Diagram No. 2, as the "Nipper Apex Vein," or whether it extends diagonally across the Nipper claim through both of its side lines, as claimed by the defendants, and as represented on Diagram No. 2 by the "Blue X Fissure," it is difficult to under-

stand upon what possible theory the court proceeded in its ruling. The statement of the witness Steward on his direct examination that the locators—himself one of the number—had

discovered a vein within the surface lines of the Nipper claim, had sunk a discovery shaft upon it, and could trace the vein in an easterly and westerly direction, opened wide the door for any proper cross-examination relative to the location of the discovery shaft, the course or strike of the discovery vein, the location and the character of the assessment work done upon the claim which might have thrown light upon the question of the course of the vein, and whether, as a matter of fact, the discovery shaft was actually sunk upon the vein.

When we further consider the fact that this witness was one of the original locators of the Nipper claim, the importance of the offered proof cannot be overestimated. We must proceed upon the assumption that the defendants could have proved by the witness what they offered to prove and measure the importance of the court's ruling accordingly. If in fact they could have proved by this witness on his cross-examination that the second shaft sunk by the locators in a northwesterly direction from the discovery shaft was upon the same vein as the discovery shaft, and that the vein was in fact the discovery vein, it would have tended strongly to prove the defendants' contention, viz., that the discovery vein of the Nipper extends diagonally across the claim, intersecting the side lines; for this witness was upon the ground, helped to make the discovery and to sink these shafts and to do the assessment work necessary to secure the patent. His testimony would have been based upon actual conditions as they existed in 1875, and would not have been a mere expert opinion based upon conditions existing nearly thirty years afterward, when the surface of the claim had been so greatly changed by buildings erected upon it and by railroad embankments and cuts that the exact location of the discovery shaft had apparently become a mere matter of speculation. This is not an instance of immaterial testimony admitted in a court of equity, but of material testimony excluded, and the importance of it is further emphasized by the fact that the court found as a fact that the discovery was made upon the vein designated the "Nipper Apex Vein," running lengthwise of the Nipper claim, and intersecting its end lines.

At the commencement of the trial of this case the parties stipulated that each side should confine itself to five geological and expert witnesses, the stipulation particularly excepting from its provisions surveyors, draftsmen, assayers, samplers, or witnesses testifying to the nature or character of workings, or persons called to testify regarding the location of claims and facts connected therewith, etc.; and it is now said that this attempted cross-examination of the witness Steward was a disguised attempt on the part of the defendants to secure the testimony of an expert in addition to the number allowed by the stipulation.    But the question asked did not seek for expert or opinion testimony, but facts were sought to be elicited respecting which any prospector or person familiar with the work done could testify.    Furthermore, the stipulation itself excluded from its provisions just the character of testimony sought to be elicited from this witness.

4. In its fourth finding of fact the court declares that the location of the Nipper was prior to the location of either the Oden or Neversweat claims.    We have searched the voluminous record in this case in vain for any reference whatever to the date of the location of the Neversweat claim, and are unable to find any testimony upon which this finding could have been based, so far as it affects the Neversweat claim, and counsel for plaintiffs have wholly failed to point out any reference to this matter in the record.

The same finding also declares that the patent for the Nipper claim was issued prior to the patents for either the Oden or Neversweat claims, and this finding is even more remarkable, for not only is there no evidence whatever as to when the patent to the Neversweat claim was issued, but the patent to the Oden claim, which is in evidence, shows upon its face that it was issued in January, 1886, while the patent to the Nipper claim, also in evidence, shows that it was not issued until June, 1886.    So that this finding is not only unsupported by the evidence, but is made directly in the face of the evidence to the contrary, and evidence conclusive upon the court upon that subject.

5. In finding No. 8 the court particularly recognizes the existence of the Blue X Fissure, and by finding No. 12 concedes to the Washoe company all ores in said fissure within the Oden claim above the Nipper one hundred and fifty-foot level, but decrees all ores in said fissure below that level to the plaintiffs, on account of "the union thereof with the plaintiffs' Nipper vein." While there is no express finding that the Blue X Fissure is in fact a vein, or that it actually unites with the Nipper vein, yet the language employed by the court is not susceptible of any other construction. And this was apparently the theory of counsel for plaintiffs, although most of their witnesses denied that the Blue X Fissure is a vein, for plaintiffs thought it necessary to introduce in evidence the declaratory statement of the Nipper claim, and the only possible theory upon which they could have offered it, as it appears to this court, was to avail themselves of the doctrine of relation, and thereby show that, notwithstanding the patent for the Nipper claim was issued subsequently to that for the Oden, still, as a matter of law, the Nipper was the older claim, and therefore entitled to all minerals at the point of union or intersection of the Nipper vein with the Blue X Fissure, although that intersection occurred in Oden territory.

Upon the offer of this statement in evidence, defendants objected upon the ground that the same was void, for the reason that it was not verified as required by the laws of the territory of Montana in force at the date of filing of such statement. This objection was overruled, and exception saved. The verification to the Nipper declaratory statement is as follows: "John M. Steward and R. L. Liles, who being first duly sworn, on cath says each for himself that he is of lawful age, a citizen of the United States, and that the foregoing notice by them subscribed is a true copy of the original notice of location of the claim above described as posted thereon, on the day therein stated." The statute in force when this statement was presented for record provided: "Any person or persons who shall hereafter discover any mining claim upon any vein or lode, bearing gold, silver, cinnabar, lead, tin, copper, or other valu-

able deposits, shall, within twenty days thereafter, make and file for record in the office of the recorder of the county in which said discovery is made, a declaratory statement therof in writing, on oath, before some person authorized by law to administer oaths, describing such claim in the manner provided by the laws of the United States." (Laws of 1873, Extra. Session, page 83.)

The federal statute under which this claim was sought to be located (Section 2324, Rev. Stats. [U. S. Comp. Stats. 1901, p. 1426]) does not require that the notice or declaratory statement shall be verified. In fact, it does not require that any notice or declaratory statement .shall be filed for record at all, but merely provides that, if recorded, such notice or statement shall contain statements of certain facts. It has been suggested by certain text-writers upon Mining Law that the Montana statute was unconstitutional, in making this requirement; but we deem this question finally determined in favor of the validity of such statutes by the decision of this court in *Baker* v. *Butte City Water Co.,* 28 Mont. 222, 104 Am. St. Rep. 683, 72 Pac. 617, affirmed on appeal to the supreme court of the United States in *Butte City Water Co.* v. *Baker,* 196 U. S. 119, 25 Sup. Ct. 211, 49 L. Ed. 409.

Assuming, then, as we may rightly do, that the statute was constitutional, the invalidity of the Nipper declaratory statement becomes apparent. This question has been determined so often by this court that it cannot now be deemed open for further controversy. (*McCowan* v. *Maclay,* 16 Mont. 234, 40 Pac. 602; *Metcalf et al.* v. *Prescott et al.,* 10 Mont. 283, 25 Pac. 1037; *O'Donnell* v. *Glenn;* 9 Mont. 452, 23 Pac. 1018, 8 L. R. A. 629; s. c., 8 Mont. 248, 19 Pac. 302.)

Of the doctrine of relation it has been said by courts and text-writers that the proceedings in the Land Department leading up to and including the issuance of patent amount to an adjudication that all requirements of the law have been met. and the patent, when issued, relates back to the date of location. What is meant by "date of location" is not so easily determined. In this state, at least, "the law contemplates that the location

of a mining claim shall consist of a number of distinct acts, which are independent of each other. The last that may be done does not relate back to the first, and all must be performed before a legal location exists." (*Gonu* v. *Russell*, 3 Mont. 358; *McKay* v. *McDougall*, 25 Mont. at page 266, 87 Am. St. Rep. 395, 64 Pac. 672; Lindley on Mines, sec. 329.) "A location is not made by taking possession alone, but by working on the ground, recording and doing whatever else is required for that purpose by the Acts of Congress and the local laws and regulations." (*Belk* v. *Meagher*, 104 U. S. 279, 26 L. Ed. 735.)

The acts which, taken together, amount to a location, begin with the discovery and terminate with the filing for record of the declaratory statement; and, as the location is not complete until such declaratory statement is filed, the date of its filing must of necessity be the date to which the patent relates. If, then, in this instance the Nipper declaratory statement was invalid, one of the essentials of a legal location was wanting, and a location, within the meaning of our law, was not effected, and there was not any date to which the Nipper patent could relate —at least, no date antecedent to the application for patent, which was the first intimation the government had that an attempt had been made to locate this claim.

But it is contended that the issuing of the patent was itself conclusive that the declaratory statement, notwithstanding its patent invalidity, was in fact valid, and authorities may be found to uphold this contention. Indeed, there are expressions in our own early decisions apparently sustaining this view. In Lindley on Mines, section 742, the doctrine is announced that in cases of mining patents the issuance of the patent is in effect an adjudication of all questions respecting matters which might have been the subject of an adverse claim, or, in other words, where there is any surface conflict whatever, and there is a failure to adverse, after patent has issued to the applicant, the question of priority of his title is conclusively presumed. (*Empire State-Idaho Min. & D. Co.* v. *Bunker Hill & Sullivan Min. & C. Co.*, 114 Fed. 420, 52 C. C. A. 222.) But as we have here-

tofore said, the only instance, after patent, where the question of the date of location may arise, is when seeking to apply the doctrine of relation in connection with the particular patent, for the purpose of determining the ownership of minerals at the point of union or intersection of veins, as provided by section 2336 of the United States Revised Statutes (U. S. Comp. Stats. 1901, p. 1436). It is to be observed that under this section the ownership is to be determined by the priority of *title*. But the intersection of veins does not give rise to an adverse claim, within the meaning of that term as employed in the public land laws. (*Champion Min. Co.* v. *Consolidated Wyo. Gold Min. Co.*, 75 Cal. 78, 16 Pac. 513.) Indeed, it frequently occurs that such intersection or union is not discovered until long after patent has issued, and in any event an adverse claim only arises from surface conflicts.

The reason for adopting the rule of relation is apparent. For when the location is made in conformity with the provisions of the federal statutes, and in compliance with the state laws and local mining rules and regulations, it has the effect of withdrawing from the public domain the particular claim, and gives to the locator the right to the exclusive possession so long as he complies with the law. "The location, to be effectual, must be good at the time it is made. *When perfected* it has the effect of a grant by the United States of the right of present and exclusive possession." (*Belk* v. *Meagher, supra.*) And when the right thus initiated is further evidenced by patent, it is reasonable to relate the patent to the initiation, and protect the patentee against intervening rights. But if the locator did not proceed according to law, he did not initiate any right to which the patent could relate. Of course, the government, being the owner of the claim, may issue patent therefor upon such showing as Congress may see fit to exact. But Congress has not attempted to make such patent, when issued, retroactive in its effect, or relate back to any prior point of time, if, indeed, it might do so.

The doctrine of relation is a fiction of law, and whether a patent relates to the date of location is to be determined by the

facts of each particular case. It may be conceded that the patent is conclusive that everything has been done which the federal statutes require shall be done as condition precedent to patent, but we cannot believe that it is conclusive of matters with respect to which the government issuing the patent has not any concern.

As indicating the liberality of the government in this regard, reference need only be had to the provisions of section 2332 of the United States Revised Statutes (U. S. Comp. Stats. 1901, p. 1433), under which it is not even necessary for the applicant for patent to show the initiation of his right at all, but merely possession and continuous working of the claim for a period equal to the statute of limitations of the state in which the claim is situated are sufficient, in the absence of an adverse claim, to entitle him to patent. If it be contended that the doctrine of relation applies to every patent, it is pertinent to inquire, to what date would a patent issued under the provisions of section 2332 above relate?

We are satisfied that the patent is not conclusive of the fact that a declaratory statement in due form of law was filed for record. In our judgment, when a patentee seeks to show that his title is older than the evidence of his title indicates— when he seeks to show that, notwithstanding the date of his patent or receiver's final receipt, his title in fact relates back to the date of his location, he must show affirmatively a location valid under the laws of the state where the claim is situated.

6. The court, by finding No. 9 and the decree, awards to the plaintiffs extralateral rights upon the Nipper vein between a plane drawn parallel with the east end line of the Nipper claim, passing through the northwest corner of the Oden claim at point A on Diagram No. 3, and a plane drawn through the west end line of the Anaconda claim, and extended south to an intersection with the south side line of the Anaconda. As the west end line of the Anaconda and the east end line of the Nipper are not parallel (if the maps used upon the trial are correct), it is difficult to understand upon what theory plane

No. 2 was drawn through the west end line of the Anaconda. This gives to the plaintiffs extralateral rights within Oden territory upon the Nipper vein within planes extended in fan shape. This cannot be justified upon any principle of law with which we are acquainted.

Furthermore, finding No. 9 and the decree also award to the plaintiffs extralateral rights upon the north prong of the

Nipper vein between plane No. 1, passing through the point A, and a plane drawn parallel with the east end line of the Nipper, cutting the north side line of the Anaconda at point B, and extended to an intersection with said north prong; and upon the theory adopted by the court, we think this is correct. But the court, in its award to the Nipper claim of extralateral rights, then proceeds further as follows: "And also all the ex-

terior part of the said Nipper vein, including all of its parts, spurs and branches south of the plane of the south side line of the said Anaconda lode claim, lying between the last-mentioned planes extended to an intersection therewith." The "last-mentioned planes" referred to are planes Nos. 1 and 3, but the term "Nipper vein," referred to, is more difficult to understand. In this subdivision of finding No. 9, wherever the north prong of the Nipper vein is mentioned, it is appropriately referred to as the "northerly prong or branch," or "said branch or part," while the Nipper vein (meaning the entire vein before the split occurs, or both prongs afterward) is referred to as the "Nipper vein," or "said vein, lead, lode, or ledge," and if the court used the term "Nipper vein" in the portion of finding No. 9, quoted above, in the sense of including both prongs—and it would appear that it could not have been used in any other sense—it is even more difficult to understand this portion of the finding, or to justify the decree made in conformity therewith; for this amounts to an award to the Nipper of extralateral rights upon both branches or prongs of the Nipper vein between plane No. 3 and a plane drawn parallel therewith through the northwest corner of the Anaconda, shown by the dotted line or plane on Diagram No. 3, wherever on their dip these prongs or branches pass under the Neversweat surface, and this notwithstanding the Anaconda has the apex of the south prong from the point where that prong crosses its west end line. We cannot imagine upon what theory the court proceeded in this regard. Counsel for respondents, in their brief, say: "The north part or prong of the Nipper vein must, of necessity, in its downward course, become identified with the mineralization, shown in the south prong. The developments to the west and to the deep show that this condition must follow." But the court did not find that there is in fact a union of the two prongs of the Nipper vein within the Neversweat claim, and if it had, the finding and decree in this regard could not be upheld, for the Anaconda claim is confessedly prior in right to the Nipper, as patent for the Anaconda was issued

April 29, 1882, and, while not so specifically decreed, the Anaconda is clearly the owner of the apex of the south prong of the Nipper vein from the point where that prong crosses the Anaconda west end line, and entitled to extralateral rights upon that portion of said south prong. And if there is in fact a union of these two prongs or branches within Neversweat territory, the ownership of the minerals at the point of union between plane No. 3 and plane No. 2 extended in its own direction would depend upon priority of title as between the Nipper and Anaconda, under the provisions of section 2336 of the United States Revised Statutes (U. S. Comp. Stats. 1901, p. 1436.)

In our consideration of this appeal we have refrained from considering the question of the sufficiency of the evidence to support the findings or decree, except so far as the contrary appears, but have proceeded upon the assumption that the findings are supported by the evidence. We have considered the other errors assigned, but deem them without merit.

For the reasons herein given, the judgment and order overruling defendants' motion for a new trial are reversed, and the cause remanded for a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY: I concur in the result. I am in doubt, however, as to the time to which the title by patent relates—whether to the date of the completed location, or to the date of discovery. I am inclined to think it relates to the latter. As a decision of this point is not necessary, I refrain from expressing an opinion.

MR. JUSTICE MILBURN concurs.

Rehearing denied October 12, 1905.