STEWART MINING CO. v. BOURNE et ux.

SAME v. SIERRA NEVADA MINING CO.

(Circuit Court of Appeals, Ninth Circuit. November 2, 1914.)

Nos. 2390, 2391.

1. MINES AND MINERALS (§ 47*)—MINING CLAIMS—EXTENT—PRESUMPTION.
    An ore body found beneath the surface of a mining claim presumptively belongs to the owner of that claim.
    [Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 133; Dec. Dig. § 47.*]

2. MINES AND MINERALS (§ 44*)—MINING CLAIMS—PRESUMPTION FROM ISSUANCE OF PATENT.
    Where a patent has been issued for a mining claim, there is a conclusive presumption that there is a discovery vein therein, that the claim was properly located thereon, and that all precedent acts necessary to authorize the issuance of the patent had been performed.
    [Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 130; Dec. Dig. § 44.*]

3. MINES AND MINERALS (§ 38*) — LODE MINING CLAIM — EXTRALATERAL RIGHTS.
    Evidence as to location of the apex of an ore vein on the surface of a lode mining claim *held* not to sustain the claim of the owner to extralateral rights.
    [Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 87½–113; Dec. Dig. § 38.*]

Appeals from the District Court of the United States for the Northern Division of the District of Idaho; Frank S. Dietrich, Judge.

Separate suits in equity by the Stewart Mining Company against Jonathan Bourne, Jr., and Lillian E. Bourne, his wife, and against the

Sierra Nevada Mining Company. Decrees for defendants, and complainant appeals. Affirmed.

C. S. Thomas, of Denver, Colo., Cullen, Lee & Matthews, of Spokane, Wash., and Gunn, Rasch & Hall, of Helena, Mont., for appellant.

Myron A. Folsom, of Spokane, Wash., and Curtis H. Lindley, of San Francisco, Cal., for appellees.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

ROSS, Circuit Judge. These cases were by the stipulation of the respective parties consolidated "for the purpose of trial, appeal, and other proceedings" therein—the complaint in each of the actions, in so far as the complainant's alleged title is concerned, being, according to the stipulation, identical, and the defenses set up in the answers very similar.

[1] The question involved is the ownership of certain ore bodies found beneath the surface of the patented mining claim Ontario, situated in Shoshone county, Idaho, owned by the appellee Jonathan Bourne, Jr. Presumptively, therefore, they belong to the owner of that claim. Lawson v. United States Mining Co., 207 U. S. 1, 28 Sup. Ct. 15, 52 L. Ed. 65. Their ownership, however, is asserted by the complainant in the cases, the appellant here, and owner of an adjacent mining claim called Senator Stewart Fraction, by virtue of the provisions of section 2322 of the Revised Statutes (Comp. St. 1913, § 4618), conferring upon the owners of mining claims extralateral rights under certain prescribed conditions.

It appears from the stipulation of the parties that a similar action was previously brought by the Stewart Mining Company against certain lessees of the defendants Bourne, in the district court of the First judicial district of the state of Idaho for Shoshone county, resulting in a judgment for the defendants, from which judgment an appeal was taken to the Supreme Court of Idaho, where the judgment was affirmed—the opinion of that court being reported in 23 Idaho, 724, 132 Pac. 787. The present cases were, pursuant to the stipulation of the parties, heard and decided by the court below on the evidence given in that case, which is embodied in the record here, supplemented by an agreement as to certain other facts.

[2] It appears that the Senator Stewart Fraction is also a patented claim, and although no reference is made either in the pleadings or in the evidence to the discovery vein of that claim, the conclusive presumption is that there was a discovery vein therein, that the land was properly located, and that all preliminary and precedent acts necessary to authorize and justify the issuance of the patent had been performed as the law required. Authorities to that effect are so numerous as to render their citation unnecessary. Among those prerequisites is the requirement that the boundaries of the claim be so marked on the ground as to embrace not exceeding 300 feet on each side of the middle of the vein, and not exceeding 1,500 feet in length along the vein. In Lindley on Mines (3d Ed.) p. 725, it is said:

"The 'course of the vein' appearing on the surface is plainly the course of its apex, which is generally inclined and undulating, and departs more or less materially from the 'strike.' The miner is required to locate his claim 'along the vein,' which plainly means along the outcrop or course of the apex. It would be impracticable for him to locate it along the strike, as it usually takes years of underground work to determine the strike through the length of his claim. It is often difficult even to locate properly along the apex, especially where the walls are obscured by surface disintegration or are covered with a capping or large accumulation of detritus."

Nothing to the contrary appearing, the conclusive presumption is that the Senator Stewart Fraction claim was located not exceeding 1,500 feet along the course or strike of the discovery vein, and not exceeding 600 feet in width. But the evidence clearly shows, and it is indeed conceded by the respective counsel, that beneath the surface of the latter claim there is a secondary vein, which enters its southerly side line near the center thereof, from which point it extends on a practical level to within about 100 feet of its northerly side line (underlying for that distance a fault designated in the record "Clancy fault"), where it is found in contact with a fault of very large dimensions called "Osborne fault."

[3] A map introduced in evidence on the part of the plaintiff in the case—plaintiff in error here—a modified copy of which is found in the opinion of the court below appearing in the record and is here inserted for illustration, shows, as will be seen, that at the point of contact of the vein in question with the Osborne fault the vein was thereby turned in a northeasterly direction, and thence extended about 700 feet along that fault to and out of the easterly end line of the Stewart Fraction claim. But the large model introduced in evidence by the defendants on the trial, the correctness of which was not only not questioned at the argument by counsel on either side, but is practically conceded, and which model shows the situation

of the vein by actual development, thereby amounting to a demonstration, makes plain, we think, that this vein was not turned or bent in its course or strike at the point of its contact with the Osborne fault, and did not and does not extend from that point along that fault, but, on the contrary, came to an abrupt end there. True, further to the northeasterly and at a much greater depth the ore is shown by the model to have extended to the Osborne fault, and from that point to have followed the fault northeasterly to and out of the easterly end line of the claim. But we think it manifest that such portion of the ore body cannot in any proper sense be regarded as any part of the apex of the vein. In its course upward from the bowels of the earth the

ore evidently made its way through the openings to that part of the Osborne fault last referred to, and on upward through the comparatively narrow space forming the only connection with that portion of the vein within the boundaries of the Senator Stewart Fraction claim that extends from the point of its entry therein at the southerly boundary of the claim to its contact with the Osborne fault, near the northerly side line of the claim. That portion of the vein, as has been said, underlies the Clancy fault. It is shown to be practically level, and is clearly shown by the evidence, and is practically conceded by counsel on both sides, to be a part of the apex of the vein in question. We think it is very clearly shown by the model referred to to be its only apex within the boundaries of the Senator Stewart Fraction claim. It, however, afforded the plaintiff in the case no basis for the assertion of any extralateral right, for the obvious reason that it entered the claim through one of its side lines, and in its course or strike did not pass out of the claim at all. Consequently, the plaintiff based its complaint solely upon an alleged apex thus described therein:

"That within said Senator Stewart Fraction quartz lode mining claim is a certain vein or lode bearing silver, lead, and other valuable minerals, the top or apex of which vein or lode crosses the easterly end line of said claim at approximately the center thereof between corners Nos. 1 and 2, and extends within the boundaries of said claim in a westerly direction, following the general course of said claim, for a distance of seven hundred five (705) feet, more or less."

The foregoing description, as will be readily seen from the diagram above inserted, covers an alleged apex extending from the letter C to B. The evidence showing, as has been above pointed out, that there is no such apex, the suit of the plaintiff must necessarily fail.

Accordingly in each case the judgment appealed from is affirmed.