## TAYLOR v. NEVADA HUMBOLDT TUNGSTEN MINES CO. et al.

(Circuit Court of Appeals, Ninth Circuit. January 21, 1924.)

No. 3902.

Appeal and error ⚯1011(1)—Decision of questions of fact by court on conflicting testimony not reviewable.

Decision of questions of fact by the trial court, which heard the witnesses, whose testimony was conflicting, will not be reversed by the appellate court.

Appeal from the District Court of the United States for the District of Nevada; Edward S. Farrington, Judge.

Suit in equity by David Taylor against the Nevada Humboldt Tungsten Mines·Company and others. Decree for defendants, and complainant appeals. Affirmed.

The appellant, as plaintiff in the court below, alleged in his complaint, in substance, that on January 16, 1919, he and the defendants, Nevada Humboldt Tungsten Mines Company, hereinafter referred to as the Tungsten Company, and the Tungsten Products Company, hereinafter referred to as the Products Company, entered into a contract by the terms of which he agreed to advance $100,000 and the companies agreed to deliver to him 170 tons of scheelite concentrates of certain guaranteed quality, and on the same day the individual defendants (except Loring) also entered into an agreement with the plaintiff whereby they granted to him an option on all their interest in the said two corporations also the Mill City Development Company, for a total purchase price of $498,400, the option to expire on July 16, 1919; that shortly thereafter one Bancroft, a mining engineer, at the instance of the plaintiff, made an examination of the mines and mining property of the Tungsten Company, and represented to the plaintiff that about 900 tons of

⚯For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

scheelite ore of an average of about 1.75 tungstic acid had been developed, and made ready for mining; that as a matter of fact the condition of said mines and the amount of ore developed and ready for mining of the Tungsten Company were at all times within the knowledge and information of the individual defendants, particularly Poole, Nenzel, Murrish, and Friedman; that in March, 1919, the plaintiff informed the individual defendants (except Loring) that it was probable that he would not be able to exercise his option; that thereupon Poole, Murrish, Nenzel, and Friedman, acting for themselves and the other individual defendants, with the intent to deceive the plaintiff and induce him to execute and undertake a supplemental contract, falsely and fraudulently, and by means of telegrams and letters, informed the plaintiff that further and new development work in said mines had brought in sight large quantities of scheelite ore of commercial value; that about April 2, 1919, the defendants Poole, Murrish, and Nenzel, at Denver, Colo., falsely represented to the plaintiff that, since the examination of the mining claims by Bancroft, additional ore bodies had been developed and blocked out to the amount of over 60,000 tons of scheelite ore, which would carry an average of 1.75 of tungstic acid; that all of said representations were false, and known to be false, and were made for the purpose of deceiving the plaintiff; that, relying on said representations, he entered into the contract of April 2, 1919, whereby the former agreement was modified, and the plaintiff undertook to borrow for the mining companies, on or before June 16, 1919, a sum sufficient to liquidate the indebtedness of those companies in the sum of $220,000, in consideration of which the plaintiff was to receive 62 per cent. of the issued capital stock of the Tungsten Company and the Products Company and 62 per cent. of one-half of the issued capital stock of the Development Company.

The plaintiff alleged that he entered into the contract, and gave his time and efforts, and expended more than $8,000 in carrying out his obligations thereunder, until about June 1, when he discovered that the representations were false. He alleged full performance on his part, and the refusal of the defendants to organize a new company, or amend the articles of incorporation of the Tungsten Company, or deliver the 62 per cent. of their stock; that the stock at the commencement of the suit had no market value; that there was no way of ascertaining the amount of the damages the plaintiff had suffered. The bill further alleged that the other defendants had contracted to sell the property to the defendant Loring; that the meetings of the stockholders to ratify and confirm the contract were without lawful notice; that the plaintiff had demanded a rescission of the sale to Loring; that Loring took said contracts and deeds with full notice of the plaintiff's rights; that he was informed of those rights before he had in any wise performed any part of the said contract; that a meeting of the stockholders of the Tungsten Company had been called for April 19, 1920, to ratify the sale to Loring and unless restrained by the order of the court the 62 per cent. of the capital stock, which of right was the property of the plaintiff, would be voted in favor of ratifying such sale to Loring to the irreparable injury of the plaintiff; that on June 1, 1919, the plaintiff had offered to perform every covenant on his part to be performed provided the defendants would allow him an abatement of certain terms thereof on account of said false and fraudulent representations. The prayer of the complaint was that the individual defendants be compelled to perform specifically their contracts and deliver to the plaintiff 62 per cent. of the stock of the Tungsten Company, 62 per cent. of the stock of the Products Company and 62 per cent. of the stock of the Development Company; and that he have such abatement of the provisions of the contract on account of the said false and fraudulent representations as shall be determined by the court to be just and equitable.

Issue was joined and voluminous testimony was taken. The trial court found that the plaintiff was not deceived by the defendants and was of the opinion that the alleged false representations as to tonnage in the mine were not proven; that even if they were made the plaintiff was not thereby induced to enter into the contract of April 2; that that contract, as well as the option of January 16, expired on June 16, 1919; that the plaintiff never performed

what he agreed to perform and what the contract obligated him to do; that he made no deposit of money sufficient to liquidate the indebtedness of the defendant corporations; and that he never made an unconditional offer of performance. Thereupon the court entered a decree dismissing the bill.

George B. Thatcher and William Woodburn, both of Reno, Nev., John G. Jackson, of New York City, and Hoyt, Norcross, Thatcher, Woodburn & Henley, of Reno, Nev., for appellant.

John F. Davis and Charles S. Wheeler, Jr., both of San Francisco, Cal., for appellee Loring.

H. R. Cooke and Cooke, French & Stoddard, all of Reno, Nev., for all other appellees.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). There were no findings of fact in the court below, and none were requested. The assignments of error present no question of law. They are all directed to the decision of the court upon the facts, and to some portions of the court's opinion upon the facts. In brief, it is assigned as error that the court failed to find the facts as the complaint alleged them to be, but found that the appellant had 'failed to establish by a fair preponderance of the evidence the allegations that false representations had been made by the defendants Poole, Murrish, Nenzel, and Friedman, or that the appellant was misled thereby. In his brief the appellant admits that there was a sharp conflict in the testimony as to the making of false representations, and throughout the brief he takes issue with the trial court on the questions of fact, contending that the allegations of the bill were established by the fair "preponderance of the evidence." It is nowhere asserted that the conclusions of the court below were not supported by competent evidence. The contention is that the court's finding of fact was contrary to the weight of the evidence. These admissions in the appellant's brief are sufficient to dispose of the merits of the controversy on the appeal. All the testimony in the case was taken before the court. The court had the opportunity to see and hear the witnesses and observe their demeanor. The opinion of the court shows that an exhaustive and careful review was had of all the voluminous testimony. Under those circumstances the finding of the court is final upon this appeal, Butte & S. Copper Co. v. Clark-Montana Realty Co., 248 Fed. 609, 616, 160 C. C. A. 509; Butte & S. Copper Co. v. Clark-Montana Realty Co., 249 U. S. 12, 30, 39 Sup. Ct. 231, 63 L. Ed. 447.

Upon our examination of the testimony as it appears in the transcript, and unaided, as was the court below, by the advantage of seeing and hearing the witnesses, we find the case, as the appellant admits it to be, one in which on the main issues the testimony was sharply conflicting. And we find, as did the court below, evidence that the appellant's dealings with the defendants were lacking in that degree of equity which is required of one who seeks relief in a court of equity. The appellant's option was obtained on January 16, 1919. The purchase price of the property was then fixed at $498,400. The following month he began to urge a modification of the option. His argument

was that no sale of the property at the agreed price was possible, and that the tungsten market was bad. On April 2, 1919, a modification of the contract was made whereby he was given easier terms. On June 2 he sought further modification of the terms. The modification then requested was rejected. He failed to make the advances which he had agreed to make on June 16. On July 16 his option expired, and thereafter the property was sold to Loring. We agree with the court below that the appellant has failed to prove that he was deceived by the defendants, and that from the time of obtaining his first contract he pursued a consistent plan to secure the property for less than the stipulated price and for the smallest possible outlay of money, and that he never performed what he agreed in the contract to perform and never made an unconditional offer of performance.

The decree is affirmed.