BUTTE & SUPERIOR COPPER COMPANY, LIMITED, *v.* CLARK–MONTANA REALTY COMPANY ET AL.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 598. Argued January 10, 13, 1919.—Decided March 3, 1919.

In a suit brought in the District Court to determine extralateral rights between patented mining claims, the complaint averred that the construction and application of §§ 2322–2332 of the Revised Statutes were involved, set up the discovery, location and patent of plaintiffs' claim, and, to meet a defect of the location notice under the state law, averred actual, open, exclusive and uninterrupted possession and working of the plaintiffs' claim for more than five

years from the date of discovery, the limitation period provided by § 2332. *Held*, that the latter allegations were part of plaintiffs' case, and involved a construction and application of § 2332, and hence the judgment of the Circuit Court of Appeals was reviewable in this court by appeal. Pp. 20–23.

In determining extralateral rights between adjoining patented mining claims, a failure of the earlier location notice to comply with the state law is immaterial if the junior locator, at the time of locating, knew that the earlier locator was in possession of and working his claim. The purpose of a location notice is but to give warning of the prior appropriation. P. 26.

The unequivocal possession of a mining claim gives constructive notice of the possessor's rights thereunder. *Id.*

As between two patented mining claims, priority of right to the vein of the one where it dips beneath, and unites with the vein of, the other is not determined by the dates of entries and patents but by priority of discovery and location. P. 27.

In the absence from the record of an adverse suit, there is no presumption that anything was considered and determined by the Land Department, in patenting a mining claim, except the question of the right to the surface. *Id.*

An application to patent a lode mining claim invites only such contests as affect the surface; and where no surface conflict involves the apex, a prior locator of an adjacent unpatented claim is not obliged to adverse in order to protect his right to follow his vein extralaterally on the dip. P. 28.

Findings of fact made by the District Court concerning the apexes, courses and dips of mineral veins in dispute, and affirmed by the Circuit Court of Appeals, must be accepted by this court unless clearly wrong. P. 30.

A release and quitclaim of an undivided interest in a designated mining claim, though with expressed intent to convey all the grantor's right, title and interest in the property, together with all earth, rock, ores, etc., found therein, *held*, to pass only rights and interests appertaining to that claim under its location and patent and not to affect the extralateral rights appertaining to an adjoining claim owned by the grantor. P. 30. *Montana Mining Co.* v. *St. Louis Mining Co.*, 204 U. S. 204, distinguished.

In a suit to establish extralateral rights and for an accounting for ores, where the plaintiffs were awarded relief as to their principal vein, the court also found that a branch or strand of it apexed in plaintiffs' claim and dipped beyond the side line into defendant's

territory, uniting there with the main vein again, but the place where the apex crossed the line could not be fixed. *Held* proper, while decreeing plaintiffs the owners of the strand vein and entitled to its possession throughout its depth as far as its apex extended within their claim, to reserve the question of such extent and the measurement of plaintiffs' rights thereunder for determination in future supplemental proceedings in the light of further mining development. . P. 32.

248 Fed. Rep. 609, affirmed.

THE case is stated in the opinion.

*Mr. William Wallace, Jr.,* with whom *Mr. T. L. Chadbourne* and *Mr. K. R. Babbitt* were on the briefs, for appellant:

As between those asserting prior rights to vein areas and ore bodies situated such as are those here in controversy, the question of priority of location is one of naked fact—just as it would have been before the patent entry. *Creede & Cripple Creek Mining Co.* v. *Uinta Tunnel Mining Co.,* 196 U. S. 337; *Last Chance Mining Co.* v. *Tyler Mining Co.,* 61 Fed. Rep. 557; *Hickey* v. *Anaconda Mining Co.,* 33 Montana, 46. But a patent may not be used to create a false priority wherewith to destroy preëxisting rights of others. He who first completes a valid location gains the first segregation and first mining right. *Creede Case, supra; St. Louis Smelting Co.* v. *Kemp,* 104 U. S. 649. A locator may not relate to his discovery, as against intervening rights to the same surface or rights appurtenant to adjoining free surface, location of which was first completed, unless he completed his own location within the time provided by law. *Creede Case, supra; Cedar Canyon Mining Co.* v. *Yarwood,* 27 Washington, 271.

. . As to the time when the marking of the Elm Orlu was completed, there can be no aider by presumption. There is no absolute finding of the trial court back of 1876. There is no affirmative evidence upon which this court could find an earlier date. A dominant presumption al-

ways obtains in favor of the owner of the surface against others seeking to take vein areas or ores therein beneath it. *Del Monte Mining Co.* v. *Last Chance Mining Co.*, 171 U. S. 55, 66; *Montana Mining Co.* v. *St. Louis Mining Co.*, 194 U. S. 235, 239; *Mammoth Mining Co.* v. *Grand Central Mining Co.*, 213 U. S. 72. Plaintiffs must prove a valid location anterior to the Black Rock patent and location, for they have admitted the latter to be valid.

The presumption could not apply in favor of the plaintiffs on their Elm Orlu claim because: (1) The finding with respect to discovery and marking replaced both presumption and evidence; (2) the Elm Orlu having affirmatively alleged the facts in that regard attempted to prove them; (3) a presumption cannot flow from a record not authorized by law; (4) when the only step proven—the record—appears on its face to have been taken contrary to law, it cannot form any basis for a presumption that either of the other two steps were taken in accordance with law; (5) the Elm Orlu as an extralateral claimant can have no aider by presumption to take ores from beneath the Black Rock or Jersey Blue surface. [Counsel here cited and analyzed *Hickey* v. *Anaconda Mining Co., supra; Washoe Copper Co.* v. *Junila*, 43 Montana, 178; *Creede Case*, 196 U. S. 337; *Calhoun Gold Mining Co.* v. *Ajax Gold Mining Co.*, 182 U. S. 499; *Baker* v. *Butte City Water Co.*, 196 U. S. 119; *Lawson* v. *United States Mining Co.*, 207 U. S. 1; *Hussman* v. *Durham*, 165 U. S. 144, 148; *Clason* v. *Matko*, 223 U. S. 646; *El Paso Brick Co.* v. *McKnight*, 233 U. S. 250.]

The actual notices of location were void and the Black Rock gained priority upon the constructively valid location born of its earlier patent. *Hickey* v. *Anaconda Mining Co., supra; Baker* v. *Butte City Water Co., supra; Van Buren* v. *McKinley*, 8 Idaho, 93; 2 Lindley on Mines, §§ 384, 385; *Cloninger* v. *Finlaison*, 230 Fed. Rep. 98; *Clason* v. *Matko, supra.*

Plaintiffs' "holding and working" allegation was wholly unproven, and if proven would have been immaterial: (1) Because not made the basis of the application for patent, such working may not now be relied on to create for the benefit of the patent an earlier priority, or for any purpose; (2) the segregation, if the statute provided therefor, would only be complete at the end of the period of holding.

Plaintiffs may not go back to any other pre-patent claim than the one they used as a basis for their application for patent. 3 Lindley on Mines, § 783, p. 1920; *Jacobs v. Lorenz*, 98 California, 332.

The evidence and findings do not warrant the claim that the Black Rock locators had actual knowledge of the facts concerning the Elm Orlu.

The Black Rock locators enjoyed the same right as any other citizen to locate any ground not theretofore segregated by a prior valid location. There could not be constructive segregation and private ownership of extralateral rights in the Elm Orlu on November 6, 1875, as to some citizen third persons, and no such rights as to others. If you could dispense with recording in Montana, equally could you dispense with marking of boundaries, so that a mere oral claim publicly asserted in connection with a discovery would be the equivalent of a complete valid location. Thus a quarter or possibly a half a century later, the question of priority of extralateral rights under patents, involving millions in ore values, might turn on mere oral assertions of claim and oral notice thereof. The act of Congress does not contemplate any such possibility.

If knowledge by a third party of some step in an incomplete or invalid location by another were sufficient to protect the latter, forever, without compliance with the law, the United States statute (Rev. Stats., § 2324) would be set at naught. That statute positively requires mark-

ing of the boundaries. It likewise specifies some matters that recorded notices must contain. Notice or knowledge cannot be said to dispense with these requirements, even as against third persons. *Yosemite Mining Co.* v. *Emerson*, 208 U. S. 25, is not at all in point. There the relocation was of the identical surface, so that there never could be two valid locations.

When the Black Rock owners included in their application for patent, surface in conflict with the Elm Orlu, they set in motion a statutory proceeding under § 2336, Rev. Stats., that must necessarily result in a determination of right as between those two claims. Had the Elm Orlu people adversed, they must have claimed this conflict as a part of the Elm Orlu, and the resultant suit would necessarily have depended on and determined priority of location, at least in the absence of special dealings between the parties.

It is submitted that there can be but one single and uniform priority in one location as against another. If this be so, did not the surrender of the Elm Orlu with respect to the fraction necessarily operate to establish priority for all time for the Black Rock as a single entire claim against the Elm Orlu? *Bunker Hill Mining Co.* v. *Empire State-Idaho Mining Co.*, 109 Fed. Rep. 538; *Empire State-Idaho Mining Co.* v. *Bunker Hill Mining Co.*, 114 Fed. Rep. 417; *Round Mt. M. Co.* v. *Round Mt. S. M. Co.*, 36 Nevada, 543.

*Mr. W. H. Dickson,* with whom *Mr. J. Bruce Kremer, Mr. A. C. Ellis, Jr.,* and *Mr. William Scallon* were on the briefs, for appellant:

The location certificate of the Elm Orlu claim was defective, not being verified as required by Montana Laws, 1873, ex. sess., p. 83. Under the Montana decisions this defect made the location invalid. *Butte Northern Copper Co.* v. *Radmilovich*, 39 Montana, 157; *Ferris* v. *McNally,*

45 Montana, 20; and cases cited in note, *post*, p. 25. Compliance with the state regulation, not conflicting with any federal regulation, was essential, *Baker* v. *Butte City Water Co.*, 28 Montana, 222; *s. c.*, 196 U. S. 119; *Belk* v. *Meagher*, 3 Montana, 65; *s. c.*, 104 U. S. 279, 284; *Garfield Mining Co.* v. *Hammer*, 6 Montana, 53; *Clason* v. *Matko*, 223 U. S. 646; 1 Lindley on Mines, § 249, pp. 544–5; 2 *id.*, § 329; and the interpretation of the regulation by the state court should be accepted by the federal courts. *Clason* v. *Matko, supra.*

To authorize the courts to give effect to a mining patent as of a date anterior to the final entry, it must be made to appear that prior to that date there was a valid location upon which the patent issued; and in this connection it must be borne in mind that the owners of the Black Rock claim, having obtained their patent on an earlier application, and there being no surface conflict, were not called upon and had no standing to adverse the Elm Orlu application. *Last Chance Mining Co.* v. *Tyler Mining Co.*, 61 Fed. Rep. 557, 565, 566; *Hickey* v. *Anaconda Mining Co.*, 33 Montana, 46; *Uinta Tunnel Mining Co.* v. *Creede & Cripple Creek Mining Co.*, 119 Fed. Rep. 164; *s. c.*, 196 U. S. 337, 353, 354. The question whether or not the patent related back to the date of the location was not involved in *Calhoun Gold Mining Co.* v. *Ajax Gold Mining Co.*, 182 U. S. 499. *Lawson* v. *United States Mining Co.*, 207 U. S. 1, and *El Paso Brick Co.* v. *McKnight*, 233 U. S. 250, distinguished. Sections 2292 and 2294, Montana Rev. Code, 1907, properly construed, do not validate the Elm Orlu location and could not so operate without impairing rights vested under the Black Rock claim.

Presumptively the owners of the Black Rock claim are the owners of all the veins and ore bodies found within the exterior limits of the claim extended downward vertically. *Leadville Mining Co.* v. *Fitzgerald*, 15 Fed. Cas.

No. 8158. That this presumption can only be overcome by clear and satisfactory evidence is well settled. Appellant denies that the apex or any portion of the apex of the "Pyle strand" is found anywhere within the Elm Orlu. Where its apex is found is altogether conjectural. For aught that appears from the evidence, it may have its apex in the Black Rock and, indeed, this is probably the case. *Heinze* v. *Boston & M. Mining Co.*, 30 Montana, 487; *Consolidated Wyoming Gold Mining Co.* v. *Champion Mining Co.*, 63 Fed. Rep. 540, 550. Indeed, in the case at bar, the District Court reached the conclusion that the evidence failed to support the plaintiffs' contention in this regard. Respecting that vein, therefore, a definite and conclusive decree in favor of the defendant should have been entered. It is well settled that a supplemental bill should not be allowed, or a rehearing granted, after final decree, upon new evidence which the plaintiff (as in this instance) with reasonable diligence could have discovered before beginning the suit. *Jenkins* v. *Eldredge*, 3 Story, 507, 509, 510; *Quaint* v. *McMullen*, 103 California, 381; and other cases. See also *Detroit* v. *Detroit Street Ry. Co.*, 55 Fed. Rep. 569, 572; *Callaghan* v. *Hicks*, 90 Fed. Rep. 539-542, 543; *Electrical Accumulator Co.* v. *Brush Electric Co.*, 44 Fed. Rep. 602-604.

The deed of the plaintiff Realty Company granted the fractional interest in "all earth, rock and ores" found within the exterior limits of the Black Rock claim extended downward vertically. This is its plain language, and gauging the intent by the situation of the parties but one conclusion can be drawn from the testimony, *viz*, that the acquisition of the Rainbow vein, within the Black Rock claim, was the chief incentive for paying a large price for the conveyance, and the grantee must have understood that this was being conveyed, for it was the only thing of value within the latter claim, so far as the parties then knew.

*Mr. John P. Gray,* with whom *Mr. W. A. Clark, Jr.,* and *Mr. John L. Templeman* were on the briefs, for appellees.

MR. JUSTICE MCKENNA delivered the opinion of the court.

A contest between mining claims as to the right to the ores that may be not only inside the surface lines of the claims but outside their vertical side lines—dip or extra-lateral rights. It was commenced in the United States District Court for the District of Montana by a bill filed therein by the appellees Clark-Montana Realty Company and Elm Orlu Mining Company against appellant Butte & Superior Copper Company, Limited, under a statute of Montana authorizing an action to be brought by any person against another who claims an estate or interest in real property adverse to him, for the purpose of determining such adverse claim.

The appellees (plaintiffs in the suit) obtained a decree in the District Court quieting their title and decreeing an accounting. 233 Fed. Rep. 547. The decree was affirmed by the Circuit Court of Appeals. 248 Fed. Rep. 609. To review the latter action this appeal is prosecuted.

We are confronted with a motion to dismiss on the ground that the decree of the Circuit Court of Appeals was final, the jurisdiction of the District Court having been, in legal effect, rested, it is asserted, upon diversity of citizenship. To judge of the motion requires a consideration of appellees' statement of their grounds of suit. An outline of them only is necessary.

At the outset we may say there is a diversity of citizenship, the parties being respectively corporations of Washington and Arizona, and it was so averred.

The predecessors of appellees (so run the allegations) on April 18, 1875, discovered a vein or lode of mineral-

bearing rock in the ground described as the Elm Orlu. Discovery was followed by location of the claim and other acts of its appropriation prescribed by the mining laws, proof of which was duly made; and such steps were taken that on December 30, 1882, application for patent was made and patent issued for the claim January 31, 1884. The locators and their successors in interest held, worked, possessed and actually occupied the claim continuously from the date of discovery for more than five years thereafter and during all that time were in the open, notorious, exclusive and uninterrupted possession of it.

The Clark-Montana Realty Company became the owner of the claim and entitled to its possession and of all veins, lodes or ledges having their tops or apices therein throughout their entire depth between the end lines of said claim extended northerly in their own direction. That company leased the claim to appellee Elm Orlu Mining Company, which is occupying it by virtue of the lease.

The appellant is the owner of the Black Rock, Jersey Blue, Admiral Dewey and Silver Lode Mining Claims which adjoin the Elm Orlu claim on its north side. Their locations progressed to patent.

In the Elm Orlu claim there is a vein or lode known as the Rainbow Lode, which crosses the west end line of the Elm Orlu claim and proceeds in an easterly direction through it. It was upon this lode that the discovery of the claim was made. Its downward course through the side line of the claim drawn vertically is northerly and it extends downward and passes below the surface of appellant's claims.

Appellant claims an estate or interest adverse to appellees' in the Rainbow Lode, the exact nature of which claim is unknown to appellees, but it is false and groundless.

The value of the Elm Orlu claim is given, and it is averred that appellant has by means of secret underground works in its possession wilfully penetrated the

Rainbow Lode and has extracted and is extracting large amounts of ore therefrom, the exact amount being unknown, but exceeding in value the sum of $50,000.

It is prayed that appellant declare its title and, when declared, that it be adjudged without merit; that appellees' title be established and appellant enjoined from further assertion of rights adverse to appellees, and for an accounting.

There is an averment, however, that requires notice. It is as follows:

"That the jurisdiction of the United States District Court for the District of Montana over this suit is invoked and depends upon two grounds, to-wit:

"1. Upon the ground that the construction and application of Sections 2322, 2324, 2325, and 2332 of the Revised Statutes of the United States are involved, and the amount in controversy exceeds in value the sum of Three Thousand ($3,000.00) Dollars, exclusive of interest and costs, all of which will appear from the facts hereinafter set forth.

"2.  .  .  ."

The averment is explicit and, we may assume, had a purpose; but appellees do not wish to be taken at their word. The confidence they thought and expressed when invoking the powers of the court in the first instance—and providing, we may assume, for review in case of an adverse decision—they now recant and urge that it should not be used to question or disturb their success or become an avenue of relief to their antagonist. This is not unusual and counsel has cited prior examples and the action of the court therein.

The principle of decision which the court then announced is familiar. It is that the ground of jurisdiction in the District Court and ultimately in this court on appeal from the Circuit Court of Appeals is the statement of the suing party of his cause of suit. And there must

be substance in it, not mere verbal assertion or the anticipation of defenses. *Taylor* v. *Anderson,* 234 U. S. 74; *Hull* v. *Burr, id.* 712, 720.

Has appellees' statement these defects? As we have seen, there is a confident assertion that the construction and application of the designated sections of the Revised Statutes are involved, and, turning to them, we find that they are the foundation of the rights to mining claims and express the conditions of their acquisition and extent, and, it would seem, are often the basis of controversies as to them and the solution of the controversies. And realizing this, we may suppose, appellees were at pains to set out the conditions and steps they observed, and lest there might be omission, and in remedy of it if there should be, they availed themselves by appropriate allegations of § 2332, Rev. Stats.; that is, they alleged that they were in the actual, open, exclusive and uninterrupted possession of the Elm Orlu, working the same for more than five years, (the period of limitation under § 2332) continuously from the date of discovery. And counsel admitted upon a question from the bench at the oral argument, that the allegation had jurisdictional purpose and that resort was had to the federal court that appellees might avail themselves of the provisions of § 2332 and of *Clipper Mining Co.* v. *Eli Mining Co.,* 194 U. S. 220, 226, the Supreme Court of Montana having decided [1] that a notice of location which failed to comply, as appellees' did, with a statute of Montana was defective. The allegation, therefore, was part of appellees' case— fortified the other allegations as grounds of suit and recovery—and made the suit one involving the construction and application of that section. The motion to dismiss is, therefore, denied.

On the merits the case is not of novelty. It is the usual

---

[1] *Hickey* v. *Anaconda Mining Co.,* 33 Mont. 46.

one of priority of rights in a mineral-bearing vein. The averments of appellees we have given. They are met by appellant by denials, counter averments of location and rights, not only by grounds of defense but of affirmative relief; prayers for recompense for trespasses upon its rights and that its title be quieted against the assertion of appellees.

In summary description of the controversies in the case we may say they center in the Rainbow Lode, so-called—in regard to which the parties are in absolute antagonism both in averment and contention—and incidentally in other lodes.

Upon the issues thus joined the District Court made certain findings which were affirmed by the Circuit Court of Appeals. We take them up in their order as we shall thereby be able to separate the questions of law from the questions of fact.

(1) The court found that the Elm Orlu was located before the Black Rock. Of this finding there can be no doubt if the procedure of the law was observed in the location of the Elm Orlu. The steps in that procedure and their order are well established. The first of them is the discovery of mineral-bearing rock within the claim, and it must precede location. The subsequent steps—marking the boundaries, posting notice, recording—are the declaration of title; the patent is the final evidence of it. Such steps being observed, the right is acquired under the Revised Statutes to the vein on its course and dip to the extent that its top or apex is within the surface boundaries of the claim or within vertical planes drawn downward through them. *Lawson* v. *United States Mining Co.*, 207 U. S. 1; *Stewart Mining Co.* v. *Ontario Mining Co.*, 237 U. S. 350.

It is, however, provided by § 2322, Rev. Stats., that there must be not only compliance with the laws of the United States, but with "State, territorial and local

regulations" and appellant asserts that the location of appellees' predecessors did not comply with the territorial statute of Montana and that, therefore, though the location preceded that of appellant, it was destitute of legal sufficiency. And it is contended that the Supreme Court of Montana has decided in several cases [1] that the requirements of the state statute are imperative and that one of these cases (*Baker* v. *Butte City Water Co.*) was affirmed by this court. 196 U. S. 119.

It is further contended that "from the date when final entry of the Black Rock was made, certainly from the date when patent therefor issued, the patentee's title not only to the surface of the claim, but to every vein or lode the top or apex of which was found within the boundaries thereof, became unassailable."

The following is the relevant chronology: The location of the Elm Orlu, following discovery of mineral, was made April 18, 1875, the declaratory statement thereof recorded on the 22nd of that month; the location of the Black Rock was made November 6, 1875, the declaratory statement recorded the 13th of the same month. The entry for patent of the Black Rock was made November 24, 1880, and patent issued Februrary 15, 1882; the Elm Orlu made final entry December 30, 1882, and patent issued January 31, 1884.

Such being the order of procedure of the parties, which acquired the title? Or, to express the issue in conformity to the contentions of appellant, was there defect in the location of appellees by reason of the Montana statute and did the prior issue of patent to appellant give impregnability to its title and right to the veins in controversy? The District Court, and the Circuit Court of Appeals affirming it, decided both issues against appellant on the

[1] *McBurncy* v. *Berry*, 5 Mont. 300; *O'Donnell* v. *Glenn*, 8 Mont. 248; *McCowan* v. *Maclay*, 16 Mont. 234; *Hickey* v. *Anaconda Mining Co.*, 33 Mont. 46; *Baker* v. *Butte City Water Co.*, 28 Mont. 222.

grounds: (1) That the Montana cases did not furnish the
rule of decision for the federal courts, the better reasoning
being (for which cases were cited) that as the Montana
statute did not impose a forfeiture hence none resulted
from defects in the declaratory statement of the Elm Orlu.
(2) That the Elm Orlu people were in possession of their
claim, working the same—of which the Black Rock people
had knowledge—and that hence the latter could not avail
themselves of the defects in the location of the Elm Orlu.
*Yosemite Mining Co. v. Emerson*, 208 U. S. 25, was adduced.
In the latter ground we concur, and we need not express
opinion of the other although it has impressive strength
and was conceded to have in *Yosemite Mining Co. v.
Emerson.* Indeed, there was a revulsion in the State
against the ruling of the cases and a law was enacted
making the issue of a patent for a mining claim conclusive
evidence of compliance with the requirements of the laws
of the State and making valid all locations under them
theretofore made "that in any respect have failed to
conform to the requirements of such laws," "except as
against one who has located the same ground . . . in
good faith and without notice."

*Yosemite Mining Co. v. Emerson* was concerned with a
regulation of the State of California which prescribed the
manner of the location of a claim. The regulation had
not been conformed to and the validity of the location
was attacked on that ground by a subsequent locator who
had had notice of the claim, he contending that there was
forfeiture of it. The contention was rejected and we said,
that to yield to it would work great injustice and subvert
the very purpose for which the posting of notices was
required, which was, we further said, "to make known
the purpose of the discoverer to claim title to the" claim
"to the extent described and to warn others of the prior
appropriation." The comment is obviously applicable to
the asserted defects in the declaratory statement of

appellees. It, like the California requirement, had no other purpose than "to warn others of the prior appropriation" of the claim, and such is the principle of constructive notice. It—constructive notice—is the law's substitute for actual notice, and to say that it and actual notice are equivalents would seem to carry the self-evidence of an axiom. Besides, in this case there was unequivocal possession of the Elm Orlu and it is elementary that such possession is notice to all the world of the possessor's rights thereunder. *Simmons Creek Coal Co.* v. *Doran,* 142 U. S. 417.

The other contention of appellant is, as we have said, that the title not only to the surface of its claim but to every vein whose top or apex was found within it became impregnable by the issue of patent to it. We need not follow the details of counsel's argument to sustain the contention—its reliance is on the dates on which entries for the patents were made, the Black Rock entry preceding that of the Elm Orlu. It is, however, admitted that by the issue of the patent to the Elm Orlu "it was thereby conclusively adjudicated or determined that at the time of final entry the applicants were entitled to a patent to that claim." But the admission is combined with the declaration that "to authorize the courts to give effect to a mining patent as of a date anterior to the final entry, it must be made to appear that prior to that date there was *a valid location* [italics counsel's] upon which the patent issued." And to establish that appellees' was not a valid location appellant relies upon the asserted defect in the declaratory statement. With that defect we have dealt and have decided that it had not the consequences ascribed to it. We may say, however, that priority of right is not determined by dates of entries or patents of the respective claims, but by priority of discovery and location, which may be shown by testimony other than the entries and patents. In the absence from the record of an adverse

suit there is no presumption that anything was considered or determined except the question of the right to the surface. *Lawson* v. *United States Mining Co.*, *supra*.

The relevancy of that case is resisted. Appellant urges that by the application of the Black Rock for patent appellees were "confronted with the necessity of either adversing or suffering the consequences of a failure to do so," and the consequence is said to be that the Elm Orlu was made subordinate in time and right to the Black Rock. We can not assent. The application of the Black Rock for patent did not show a surface conflict and the doctrine of the *Lawson Case* is that on an application for a patent only surface rights are determined, and Lindley is quoted for the proposition that "'an application for patent invites only such contests as affect the surface area . . . . Prospective underground conflicts . . . . are not the subject of adverse claims.'"

It is true, as we have seen, there was some overlapping of the lines of the claims. If, however, a conflict was thus indicated the Black Rock secured the advantage. The ground within the overlapping lines was included within the Black Rock patent and expressly excepted from the application of the Elm Orlu for its patent. And no part of the decree was determined by it.

(2) The District Court found from the testimony that the Elm Orlu was of prior location and right and in this was confirmed by the Circuit Court of Appeals. The inevitable consequence is that appellees have title to the veins or lodes whose tops or apices are within the Elm Orlu. This consequence appellant admits at the very beginning of its argument, and says that one of the vital questions in the case is the priority of the claims and that if the Elm Orlu had priority over the Black Rock the appellees would be entitled to all the Rainbow Lode between the planes designated by the court and would be also entitled

"to all ores within the intersection spaces of that vein with the Jersey Blue vein and the Creden vein."

We state the admission not in estoppel of appellant but only in concentration of attention upon the question for decision. In its solution there are in dispute many elements of importance. Among these necessarily is the question: In which of the claims do the veins apex, course and dip? In the question there is complexity and grounds for diversity of judgment, and the District Court felt and expressed them after hearing and estimating the testimony and the admission of the parties.

The court (Judge Bourquin) said that the chief contesting claims, the Elm Orlu and the Black Rock, "have a common side line for 850 feet of the Elm Orlu east end and of the Blackrock west end." And further said:

"It is now admitted that the Rainbow vein at the apex crosses the Elm Orlu west end line, courses easterly, crosses the common side line and branches in the Blackrock, one strand crossing the Blackrock north side line and one coursing easterly a disputed distance; that the Pyle strand of the Rainbow at some depth in the Elm Orlu diverges from the south side of the said vein and coursing easterly unites with the Rainbow at the Blackrock 1,100 level; that the Jersey Blue vein at the apex crosses the Blackrock west end line and courses easterly a disputed distance, it and the Rainbow converging on strike and dip to union or crossing; that the Creden vein at some depth in the Elm Orlu near the Blackrock west end diverges from the north side of the Rainbow, courses northwesterly under both claims and unites with or is cut off by the Jersey Blue. Very large ore bodies are in the Rainbow under both claims, at places bisected on strike by the common side line, and both parties have mined them under both claims. From various names of the veins those herein are chosen to avoid confusion." And to all other elements of decision, presented in a trial

which occupied 16 days, the court gave a painstaking
consideration and in estimate of them found the issues in
favor of appellees; and carefully adjudged the rights of
the contestants according to the lines of their respective
properties and the relation of the mineral veins to them.

The Circuit Court of Appeals affirmed the findings,
saying, by Circuit Judge Gilbert: "The appellant does not
assert that the findings of fact are unsupported by com-
petent evidence, but contends that they are contrary to
the weight of the evidence. The trial court made its find-
ings after an evidently careful and painstaking investiga-
tion of the testimony and the exhibits, and after a personal
inspection of the mining properties. We have examined
the record sufficiently to see that the findings are all sup-
ported by the credible testimony of reputable witnesses.
Upon settled principles which this court has always rec-
ognized, findings so made upon conflicting testimony are
conclusive upon this appeal." And we said in *Lawson* v.
*United States Mining Co., supra,* of the conclusion of the
Circuit Court of Appeals in such case—and the concession
is as great as appellant is entitled to—"That if the testi-
mony does not show that it [the conclusion of the court]
is correct, it fails to show that it is wrong, and under those
circumstances we are not justified in disturbing that con-
clusion. It is our duty to accept a finding of fact, unless
clearly and manifestly wrong." The findings accepted,
the conclusions of law must be pronounced to be of neces-
sary sequence.

One of the defenses of appellant is that on October 29,
1906, the Clark-Montana Realty Company, then being the
owner of an undivided one-fourth interest in the Black
Rock claim, executed and delivered to the predecessors in
interest of appellant a deed of release and quit-claim of all
its "right, title, interest, claim and demand . . . in
and to that certain portion, claim and mining right, title
and property on those certain ledges, veins, lodes or de-

posits of quartz and other rock in place, containing precious metals of gold, silver and other metals . . . " And it was stated that it was "the intention of the party of the first part to convey to the party of the second part all of its right, title and interest in and to the above described property" (referring to the claim, which was described). "Together with all the dips, spurs and angles, and also all the metals, ores, gold, silver and metal bearing quartz, rock and earth therein, . . . "

The deed is urged as an estoppel and appellant insists that it "operates to grant the fractional interest in 'all earth, rock and ores' found within the exterior limits of the Black Rock claim extended downward vertically," citing therefor *Montana Mining Co.* v. *St. Louis Mining Co.,* 204 U. S. 204; *Bogart* v. *Amanda Consolidated Gold Mining Co.,* 32 Colorado, 32.

The cited cases are distinguishable from that at bar. In *Montana Mining Co.* v. *St. Louis Mining Co.,* the land was conveyed "together with all the mineral therein contained," and the words were distinguished from those conveying extralateral rights and considered as a subject of the grant. In the other case the conveyance was of land in conflict between two claims which were in litigation, and in execution of the intention of the parties the deed was interpreted to convey "not merely the surface ground in conflict, as contradistinguished from the mineral beneath, but with this surface ground all underlying minerals" except one vein which had been excluded.

In the case at bar the conveyance was of an undivided one-fourth interest in and to the "mining claim known as the 'Black Rock' quartz lode mining claim." It passed no rights or interest that did not belong to that claim or would not appertain to it. Or, to put it another way, the deed passed the rights and interests that were derived from the United States by the location of that claim and conveyed by the patent to the locators. It was not intended to con-

vey any ·of the rights of the Elm Orlu and denude it of the
extralateral rights that the law conferred upon_it.  In other
words, the contention of appellant would make the deed a
conveyance of the Elm Orlu as well as of the Black Rock.

We do not stop to specialize either the contests of or the
judgments on particular veins.  Their relative locations
and the rights in them are disposed of by what we have
said.  But an earnest and special contest is made on the
finding of the court in regard to a vein designated as the
Pyle strand.  The District Court said, as we have seen,
"that the Pyle strand of the Rainbow at some depth in the
Elm Orlu diverges from the south side of the said vein and
coursing easterly unites with the Rainbow at the Blackrock
1,100 level." [1]  And the court decreed the appellees to be
the owners of and entitled to the possession of it through-
out its entire depth as far as its apex was within the Elm
Orlu, but expressly reserved the question of the point
where the apex passes out of the Elm Orlu.  In other words,
in the language of the Circuit Court of Appeals, "the court
left to future development the question of how far the Pyle
apex continued in the appellees' location, and to what ex-
tent beneath the Black Rock it united with the Rainbow
in such position as to be controlled by the apex in the Elm
Orlu."  This action of the District Court is attacked by
appellant.  It admits, however, that the Pyle strand in its
downward course unites with the Rainbow at or about a
point which would be intersected by a vertical plane passed
through the easterly end line of the Elm Orlu extended
northerly in its own direction, but denies that the apex or
any portion of the apex is within the Elm Orlu and asserts
that where its apex is found is altogether conjectural and
that "for aught that appears from the evidence, it may·

---

[1] The formal finding of the District Court is as follows:
"That the Pyle strand of the Rainbow vein diverges from the south
side of the latter vein in the Elm Orlu claim, and there and for some
indefinite distance easterly has its apex in the Elm Orlu claim."

have its apex in the Black Rock and, indeed, this is probably the case." And it is urged that a situation is presented not of the weight of evidence, but of the absence of evidence, or, to quote counsel, the decision is "one which finds no support whatever in the testimony." But manifestly these are but assertions—attacks on the estimate of the testimony made by the District Court and Circuit Court of Appeals and the conclusion it justifies.

It is further said that issue was made upon the title to the Pyle strand and that it was the duty of the court to definitely pass upon it and to decide for appellant, but that "instead of entering such a decree, the court so framed, and intentionally so framed, its decree that it would not be a bar to a new suit which appellees might thereafter bring against this appellant to quiet title to all of the vein below the plane of union between it and the Pyle strand, if by further development they discovered additional evidence in support of their contention that the Pyle strand did apex in the Elm Orlu at the point of alleged forking and at its apex continued thence easterly to and across the east end line of the Elm Orlu."

It is true the apex of the Pyle strand was found to be within the Elm Orlu, but all else as to the vein was reserved and, in the circumstances, properly reserved. There was simply retention of the case for supplementary proceedings, as the Circuit Court of Appeals observed, to carry out the decree and make it effective under altered circumstances. *Joy* v. *St. Louis*, 138 U. S. 1, 47; *Union Pacific Ry. Co.* v. *Chicago, Rock Island & Pacific Ry. Co.*, 163 U. S. 564, 603.

*Decree affirmed.*