### SOUTHWEST PUMP & MACHINERY CO. et al. v. JONES.
### No. 10622.

Circuit Court of Appeals, Eighth Circuit.

Feb. 18, 1937.

Paul Barnett, of Kansas City, Mo. (I. N. Watson, Henry N. Ess, and Carl E. Enggas, all of Kansas City, Mo., on the brief), for appellants.

W. F. Woodruff, of Kansas City, Mo. (Spencer A. Gard, of Kansas City, Mo., on the brief), for appellee.

Before GARDNER, THOMAS, and FARIS, Circuit Judges.

GARDNER, Circuit Judge.

This action was instituted by appellee as an action at law to recover damages on account of personal injuries alleged to have been suffered by her as the result of an automobile accident. The parties will be designated as they appeared below.

Plaintiff alleged specific injuries, some of which constituted permanent scarrings and disfigurements; alleged a displacement of the left sacroiliac joint and an exostosis on the left side of the sacrum, rendering her lame. The answer, among other things, pleaded a settlement and a release of damages executed by plaintiff for the consideration of $250, for which she released and discharged defendant from "all my claims and causes of action I now have or hereafter may have on account of injuries sustained, etc." Plaintiff, by way of reply, alleged, among other things, that this release had been executed by her at a time when she did not know of the extent of her serious and permanent injuries and at a time when she and the representative of the defendants believed that her inju-

ries were temporary, and that both she and the defendants were mistaken and misinformed as to the extent and character of her injuries. The facts as to which it was alleged there was a mutual mistake were (1) that plaintiff had no injuries save cuts, multiple bruises, and muscular strain, whereas there were numerous pieces of glass remaining in her face and head which it required surgery thereafter to remove, and (2) that she suffered no serious injury of a permanent nature, whereas she suffered a displacement of a sacroiliac joint. Plaintiff then asked that the release be canceled and set aside, she having, prior to the commencement of the action, tendered and offered to repay the consideration received by her, which tender she renewed in her pleadings. The equitable issue thus raised was thereupon set down for hearing on the equity side of the docket and resulted in a decree in favor of plaintiff, canceling the release. From the decree so entered, defendants prosecute this appeal.

No question is raised as to the regularity or propriety of the proceeding of the court in transferring this issue to the equity side of the docket and disposing of it in advance of the trial of the other issues.

The court found on the evidence produced, practically all of which was oral testimony, that, "Before the release sought to be set aside was signed, plaintiff had been examined and was under treatment by her own physician, Dr. Henry J. McKenna; had been examined by Dr. S. E. Haynes, a physician engaged by defendants' insurance carrier, both of whom had the benefit of X-ray examination of plaintiff's face and head made at St. Mary's hospital. Neither the examination of Dr. McKenna or Dr. Haynes or the X-ray examination at the hospital disclosed the fact that one very large piece of glass and numerous smaller pieces of glass remained in plaintiff's temple, nor did the examinations disclose the sprain or displacement of the sacro-iliac joint, which conditions were unknown to the plaintiff and unknown to Mr. M. D. Campbell, Jr., the insurance adjuster, at the time the release was signed."

The court also found that, "The unknown facts that the glass remained in plaintiff's temple; and that she had a sacro-iliac displacement were material facts affecting the character and extent of plaintiff's injuries and bearing on the settlement for her injuries; and these un-known facts were not in contemplation of the parties at the time of the settlement and at the time the release sought to be set aside was signed."

The judge, in his opinion, made a part of his findings, said: "It is obvious that the parties acted upon what they believed to be the facts as they existed at the time. They were both mistaken about them. The testimony was clear and convincing both that the settlement was made with the thought that there was no glass in plaintiff's body and that the wounds suffered in the accident would heal in regular course. The evidence was clear and undisputed that many pieces of glass were in fact in plaintiff's face and head at the time. Under such circumstances, she would be entitled to have the release cancelled."

■ The chief contention of defendant on this appeal is that the findings of the court were not sustained by substantial evidence, or at least that the evidence was not so clear, cogent, or convincing as to warrant the court in finding that the release was induced by the mutual mistake of the parties. The findings of the trial court on issues of fact are presumptively correct, and will not ordinarily be disturbed, except for obvious error in the application of the law or serious mistake in the consideration of the proof,[6] and this is particularly true where the evidence upon which the findings are based was oral testimony. Lion Oil Refining Co. v. Albritton (C.C.A.8) 21 F.(2d) 280; Drake v. Thompson (C.C.A. 8) 14 F.(2d) 933; Karn v. Andresen (C.C.A.8) 60 F.(2d) 427; United States v. Grass Creek Oil & Gas Co. (C.C.A.8) 236 F. 481; United States v. United Shoe Machinery Co., 247 U.S. 32, 38 S.Ct. 473, 62 L.Ed. 968; Butte & S. Copper Co. v. Clark-Montana Realty Co., 249 U.S. 12, 39 S.Ct. 231, 63 L.Ed. 447.

It appears from the evidence that plaintiff was injured while riding in an automobile driven by her daughter. The car was demolished in a collision with another car. She was riding in the rear seat and was thrown through the rear plate glass side window; was rendered unconscious, and sustained numerous lacerations on her head, face, and neck, and other injuries. She was first taken to Liberty, Mo., for first aid treatment, and then to St. Mary's Hospital, at Kansas City, for surgical and medical attention. Soon after she entered the hospital, her daughter initiated negotiations for settlement. An adjuster repre-

senting defendants conferred with plaintiff and her daughter, and during these negotiations, she was examined by a Dr. Haynes, representing defendants, and treated by her own physician, Dr. McKenna. Although both of these physicians had examined her, they were not advised of and did not discover broken pieces of glass in her face. On November 12, 1930, she executed the release in question, but remained in the hospital until November 25, 1930. On November 28, 1930, she went to see her doctor at Kansas City, who then removed a little stick from a place right over her left eye, and removed a piece of glass from up over her ear. This piece of glass is apparently a piece of the plate glass of the wrecked car, is irregular in shape, about an inch wide at the widest end, about a half or three-quarters of an inch wide at the narrowest end, about an inch and a half to two inches long, and from a quarter to three-eighths of an inch in thickness. Sometime later, plaintiff consulted a doctor at her home, Council Bluffs, Iowa. He removed glass and some other foreign substances from various parts of her face and head, and he testified that she had a tender sacroiliac joint.

Mr. Campbell, who represented the defendants in the negotiations for settlement, did not know of the presence of this glass at the time of the execution of the release, and neither did plaintiff. She had an impression that there was something in her temple, but was reassured by the statements of the physicians and the report of the X-ray photograph that she was mistaken in this.

A Dr. Donaldson made an X-ray examination of plaintiff in April, 1932. The X-ray films were produced, and he testified that they indicated that there were still several foreign substances in the side of plaintiff's head, outside of the skull, which he diagnosed as fragments of glass. The examination included a stereoscopic X-ray of the hip joint and lumbar spine, and he testified, among other things, that the pelvis rim was distorted, that there was a displacement in the sacroiliac that was serious. It appears from the testimony that none of these conditions were known by either the attending physicians, the plaintiff, or the representative of defendants at the time the settlement was negotiated.

■ It is urged that a court of equity should not set aside an executed written contract on the ground of mistake unless the evidence be "clear, cogent, convincing and indubitable." It may be observed that the trial court found the evidence to be of that character. What constitutes such clear, cogent, convincing, and indubitable evidence depends upon the character of the testimony, including all the surrounding facts and circumstances introduced, and is peculiarly a question to be determined in the first instance, at least by the trial court. Where the evidence is oral, as in the instant case, the appellate court should disturb the findings of the trial court with great reluctance. There is no substantial dispute in the evidence. The representatives of the defendants and the defendants' doctor admit that they did not know about the extent of plaintiff's injuries as disclosed by later examinations. The plaintiff testified that she did not know of these conditions. These facts were material, as they clearly affected the extent and character of her injuries and correspondingly the amount of damages suffered by her. That all the parties were mistaken as to the extent and character of plaintiff's injuries is further indicated by the amount of the consideration given in settlement. Inadequacy of consideration is not ordinarily in itself sufficient basis for the cancellation of an executed contract, yet it is a proper element for consideration along with other circumstances. If plaintiff's injuries are of a character indicated by the testimony in this case, then a settlement of them for a consideration of $250 would surely be very inadequate.

We conclude that the findings are sustained by ample testimony, and there remains to consider whether, under these findings, plaintiff was entitled to a decree cancelling the release.

■ The release was induced by mutual mistake as to material present facts and conditions. The settlement intended by both the parties was for the injuries and damages disclosed and then known by the parties, and not for all injuries, whether known or unknown. Under such circumstances, plaintiff was entitled to avoid the release. Lion Oil Refining Co. v. Albritton (C.C.A.8) 21 F.(2d) 280; Atlantic Greyhound Lines v. Metz (C.C.A.4) 70 F.(2d) 166; Scheer v. Rockne Motors Corp. (C.C.A.2) 68 F.(2d) 942; Robert Hind, Ltd., v. Silva (C.C.A.9) 75 F.(2d) 74; Great Northern R. Co. v. Fowler, 197

U.S. 624, 25 S.Ct. 800, 49 L.Ed. 911; Great Northern R. Co. v. Reid (C.C.A.9) 245 F. 86; O'Meara v. Haiden, 204 Cal. 354, 268 P. 334, 60 A.L.R. 1381.

It appears both from the findings of the court and the undisputed testimony that there were serious injuries unknown at the time of the settlement, which, if known, would have had a material bearing upon the amount of the payment, and but for the mistake would have been taken into account. The consideration received was intended as compensation for the known injuries.

We are of the opinion that the decree entered is sustained by the findings, and it is therefore affirmed.